**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ASHFORD HOSPITALITY TRUST, INC.,<br><br>                       Plaintiff,<br><br>       -against-<br><br>CYGNUS CAPITAL, INC., CYGNUS CAPITAL ADVISERS, LLC, CYGNUS GENERAL PARTNERS, LLC, CYGNUS CAPITAL REAL ESTATE ADVISORS II, LLC, CYGNUS OPPORTUNITY FUND, LLC, CYGNUS PROPERTY FUND IV, LLC, CYGNUS PROPERTY FUND V, LLC, CHRISTOPHER SWANN, RICHARD BURNS, SHANNON JOHNSON, WILLIAM MILLER, JR., RODERICK NEWTON II, THORNTREE CAPITAL PARTNERS LP, THORNTREE CAPITAL MASTER FUND LP, THORNTREE CAPITAL GP LLC, and REBECCA HARVEY,<br><br>                   Defendants. | No. 21-cv-_____ |

**COMPLAINT**

Plaintiff Ashford Hospitality Trust, Inc. ("Ashford Trust" or the "Company"), by its undersigned attorneys, for its Complaint against Defendants Cygnus Capital, Inc. ("Cygnus Capital"), Cygnus Capital Advisers, LLC ("Cygnus Advisers"), Cygnus General Partners, LLC ("Cygnus GP"), Cygnus Capital Real Estate Advisors II, LLC ("Cygnus Property GP"), Cygnus Opportunity Fund, LLC ("Cygnus Opportunity"), Cygnus Property Fund IV, LLC ("Cygnus IV"), and Cygnus Property Fund V, LLC ("Cygnus V," and, collectively, "Cygnus"); Christopher Swann ("Swann" and, collectively with Cygnus, the "Cygnus Defendants"); Richard Burns ("Burns"), Shannon Johnson ("Johnson"), William Miller, Jr. ("Miller"), and Roderick Newton II ("Newton") (collectively, with Swann, the "Individual Defendants"); ThornTree Capital Partners LP,

ThornTree Capital Master Fund LP, and ThornTree Capital GP LLC (collectively, the "ThornTree Defendants" or "ThornTree"); and Rebecca Harvey ("Harvey" and, collectively along with the other defendants herein, "Defendants"), alleges, on knowledge as to itself and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action to protect the Company and its stockholders from Defendants' grossly manipulative, unlawful, and opportunistic effort to take control of the Company without paying a fair control premium, without the consent of the board or other stockholders and without disclosing key material facts about Defendants' plans and proposals with respect to the Company.

2.      Specifically, Defendants deceptively and unlawfully formed an undisclosed group, or "wolf pack," of raider investors led by an activist hedge fund to improperly and opportunistically seize control of a publicly traded hotel owner whose business and stock price have been decimated by the COVID-19 pandemic. They did so by accumulating a massive secret stake in the company, violating the federal securities laws and the terms of the Company's charter backed by Maryland law.

3.      Plaintiff Ashford Trust is a publicly traded corporation based in Dallas that focuses on owning and operating hotels in predominantly urban areas that are used largely by business travelers, a customer base which has temporarily dried up due to the pandemic and numerous government-imposed travel restrictions in response to the pandemic.  Plaintiff's investor base includes fixed-income investors who rely on securities law and the Company's charter to protect them from the type of predatory behavior Defendants have engaged in here.

-2-

4.      Defendant Cygnus is a hedge fund based in Atlanta, Georgia and led by Swann, its President and CEO.  Defendant ThornTree is a hedge fund whose Chief Investment Officer ("CIO") is Swann's long-time friend, former colleague, and business partner with close ties to Swann/Cygnus.  Defendant Harvey is Swann's mother-in-law.

5.      On December 31, 2020, Swann advised Ashford Trust it was seeking to nominate its people—identified here as the Individual Defendants—for election to Ashford Trust's Board of Directors (the "Board").  At that time, Swann stated that he was seeking to nominate individuals who would occupy 6 of 8 seats on the Board if elected- a move which highlights the desire to control the Company.   After delivery of the notice of nomination (the "Nomination Notice"), one nominee dropped out of consideration.  The remaining 5 Individual Defendants who serve as Swann's purported nominees still would control the Board by occupying a majority (5 of 8) of the seats if elected at Ashford Trust's upcoming 2021 annual meeting of stockholders (the "Annual Meeting")—effectively allowing Defendants to take control of Ashford Trust through a series of deceitful and intentional acts and omissions.

6.       While the Cygnus Defendants had previously complained about the direction of the Company, they went to great lengths to conceal the fact that they were plotting to seize control of the Company by accumulating and parking the stock needed to achieve that goal using a thinly disguised group of friends and family.

7.      Defendants concealed that they formed a stockholder "group" (as defined by the federal securities law) with the ThornTree Defendants and Harvey despite collectively acquiring stock amounting to 21.3% ownership of Ashford Trust's then outstanding common stock.  Defendants acted in concert to warehouse this stock, including by coordinating their purchases of Ashford Trust's stock.  For example, the ThornTree Defendants and the Cygnus Defendants filed Schedules 13G and 13D/A one day apart disclosing investment stakes over 5%

and acquisitions on the same day, November 9, 2020.  Defendants' close family and business ties, however, are undeniable.  Swann's mother-in-law, Harvey, lives in Connecticut and at the age of 79 has never before been an activist shareholder until now for her son-in-law Swann's company. Moreover, Harvey is also a limited partner/investor in and party to an agreement relating to securities with one or more Cygnus entities.  The ThornTree Defendants' CIO has a 20-year business relationship with Swann, including once starting a company, Global Food Exchange, together out of Swann's Atlanta apartment, and ThornTree also has not been an activist shareholder.  The notion they are not acting in concert with Cygnus thus defies credulity.

8.     The Company's Articles of Amendment and Restatement (the "Charter") expressly provide that no group can own more than 9.8% of the Company (the "Ownership Limit"). This limit preserves the Company's real estate investment trust ("REIT") status and protects its investors.  Section 2-105(a)(12) of the Maryland Corporations and Associations Code specifically allows for such share restrictions, and Maryland courts routinely uphold them.[1] Nevertheless, by surreptitiously accumulating 21.3% of the common stock[2] in seemingly coordinated and carefully timed purchases, Defendants directly violated the Ownership Limitations in the Company's Charter and federal securities laws (Section 13(d) and Rules 13d-1 and 13d-101) that required this secret group and their combined stock holdings to be disclosed. Defendants' actions also violated Section 13(d) and Rule 13d-101 because, despite their public

---

[1] *See* Md. Code Ann., Corps. & Ass'ns § 2-105(a)(12) (West 2021) ("A corporation may provide by its charter . . . [f]or restrictions on transferability or ownership for any purpose, including restrictions designed to permit a corporation to qualify as[] . . . [a] real estate investment trust under the Internal Revenue Code . . . ."); *Realty Acquisition Corp. v. Prop. Tr. of Am.*, No. JH-89-2503, 1989 WL 214477, at *3 (D. Md. Oct. 27, 1989) (holding that trustees "properly used their discretion in refusing to exempt [plaintiff] from the 9.8 percent ownership limit").

[2] The group also accumulated a large portion of common stock.

criticisms and statements regarding their plans for the Company, their securities filings fail to disclose the group's planned takeover.

9.      In an apparent effort to divert attention from their true intent and conceal their coordinated efforts to accumulate a major chunk of Ashford Trust stock and overtake the Company, the Cygnus Defendants for themselves sought and obtained from the Company a waiver to exceed the 9.8% Ownership Limit and go to 15%.  The Cygnus Defendants obtained this waiver under false pretenses and is thus, invalid.  Never once did the Cygnus Defendants reveal their coordinated efforts with the other Defendants to accumulate a block of shares far in excess of Cygnus' waiver request.  Moreover, Ashford Trust granted only Cygnus, not the group,  a waiver; thus, the waiver does not apply to any other members of the group or the group's combined holdings.  Further, even assuming the waiver for Cygnus to own up to 15% was valid and could somehow be extended to the entire group, the group's 21.3% stock accumulation far exceeded the waiver limit.

10.     At the time the Cygnus Defendants exceeded the Ownership Limit, the Company Charter automatically resulted in the transfer of all shares of the group in excess of 9.8% to a Company-designated charitable trust for the benefit of a charitable beneficiary where those shares remain.

11.     Defendants' intentional misrepresentations and omissions, including about its group status, violate Sections 13(d) and 14(a) of the Exchange Act and deprive Ashford Trust and its stockholders of information needed to evaluate the Individual Defendants' candidacies as potential members of the Board in advance of the Annual Meeting and to understand that Defendants are, using false pretenses, carrying out a hostile takeover.

12.     Consistent with their takeover scheme, Defendants refused to provide all of the information required by the Company's Amended and Restated Bylaws (the "Bylaws") , and

the information they did provide was incomplete and fraught with material misrepresentations and omissions.

13.     Ashford Trust's Bylaws, like the bylaws of many public companies, contain advance notice requirements (the "Advance Notice Requirements") obligating Defendants to provide material information about their credentials and qualifications, investments in the Company, if any, and their plans and proposals for the Company.  The Advance Notice Requirements also incorporate the requirements of the federal securities laws and require stockholders to comply with all applicable state and federal laws when purporting to nominate individuals for election to the Board.  Advance Notice Requirements serve the important public interest function of providing the Board and stockholders necessary information for determining the fitness of a stockholder-nominated director candidate well in advance of the election of directors at the Annual Meeting.

14.     As with Defendants' public filings, Defendants' nomination materials (the "Nomination Materials") fail to disclose the Individual Defendants' plans and proposals for Ashford Trust and its assets if they are elected to the Board.  Each of the purported nominees completed questionnaires (the "Questionnaires") asking them to disclose their "plans or proposals" for the Company, including with respect to a "change of control," "a sale," or a "sale or other disposition of any of the Company's assets or equity securities."   Strikingly and contrary to Cygnus' public statements, the Individual Defendants denied having any plans or proposals for the Company.

15.     Indeed, in public statements made before they commenced their proxy contest, Defendants advocated for Ashford Trust to explore various transactions, including some that would garner a quick profit for Cygnus, without regard to their overall soundness for the Company or its other stakeholders, including investors.  For example, the Cygnus Defendants

publicly called on Ashford Trust to explore "asset sales," "refinancing of assets," "raising additional short term debt" and a "merger with or sale to a stronger REIT." The Cygnus Defendants also publicly advocated that Ashford Trust fire its longtime external advisor and breach its advisory agreement. Nevertheless, the Cygnus Defendants never disclosed these—or any other—plans and proposals in their Schedule 13D filed with the Securities and Exchange Commission ("SEC") announcing their nomination of director candidates, thereby violating Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 13d-101 thereunder.

16.     The Nomination Materials are deficient in other respects, including by failing to disclose information concerning Related Persons (*i.e.*, affiliates, associates, and employers) and one of the purported nominees' present employment, as required under both Regulation 14A under the Exchange Act and the Advance Notice Requirements.

17.     As a result of Defendants' failure to comply with the federal securities laws and the Company's Bylaws, Ashford Trust and its stockholders have been deprived of the information necessary to evaluate the suitability of the purported nominees or the purpose of Cygnus' proxy campaign. Defendants—sophisticated investors aware of their obligations under the federal securities laws and corporate laws—should not gain an unfair advantage in their efforts to seize control of the Board and should be subject to the same rules applicable to all stockholders.

18.     Accordingly, Plaintiff asks the Court to: (i) order Defendants to correct the misrepresentations and omissions in their Schedule 13D, proxy solicitations, and amendments thereto, and enjoin Defendants from trading in Ashford Trust common stock until they have done so; (ii) enjoin Defendants from voting any shares owned at the time of their violations of Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-101 promulgated thereunder; (iii) declare that Swann's Nomination Notice is invalid due to Defendants' failure to comply with the Advance

Notice Requirements and, as a result, that the slate of purported nominees is invalid and ineligible to stand for election at the 2021 Annual Meeting; (iv) declare that Defendants cannot cure their violations of the Advance Notice Requirements; (v) enjoin Defendants from submitting or purporting to submit their purported nominees to Ashford Trust's stockholders for election to the Board at the 2021 Annual Meeting; (vi) enjoin Defendants from soliciting proxy votes for the purported nominees or distributing any proxy materials regarding the purported nominees; (vii) declare that all shares owned by Defendants in violation of the Ownership Limitations were automatically transferred to the charitable trust set forth in the Company's Charter, and that Swann was not a record holder of shares on December 31, 2020; and (viii) award Ashford Trust such other and further relief as this Court may deem just and proper.

## PARTIES

19.     Plaintiff Ashford Trust is a publicly traded Maryland corporation with its principal place of business at 14185 Dallas Parkway, Suite 1100, Dallas, Texas.  Ashford Trust is authorized to do business in the State of Texas.  Ashford Trust is taxed as a real estate investment trust ("REIT") under the Internal Revenue Code.  Ashford Trust does not have any dedicated employees and is externally advised by Ashford Hospitality Advisors LLC, a subsidiary of Ashford Inc.  Ashford Trust conducts its business through Ashford Hospitality Limited Partnership, its operating partnership.

20.     Defendant Cygnus Capital is a Wyoming corporation with a principal place of business at 3060 Peachtree Road NW, Suite 1080, Atlanta, Georgia 30305.  Cygnus Capital is the managing member of each of Cygnus Advisers, Cygnus GP, and Cygnus Property GP.

21.     Defendant Cygnus Advisers is a Wyoming limited liability company with a principal place of business at 3060 Peachtree Road NW, Suite 1080, Atlanta, Georgia 30305. Cygnus Advisers is the investment advisor of Cygnus Opportunity.

22.     Defendant Cygnus GP is a Wyoming limited liability company with a principal place of business at 3060 Peachtree Road NW, Suite 1080, Atlanta, Georgia 30305. Cygnus GP is the general partner of Cygnus Opportunity.

23.     Defendant Cygnus Property GP is a Wyoming limited liability company with a principal place of business at 3060 Peachtree Road NW, Suite 1080, Atlanta, Georgia 30305.  Cygnus Property GP is the general partner and investment advisor of Cygnus IV and Cygnus V.

24.     Defendant Cygnus Opportunity is a Delaware limited liability company with a principal place of business at 3060 Peachtree Road NW, Suite 1080, Atlanta, Georgia 30305.

25.     Defendant Cygnus IV is a Delaware limited liability company with a principal place of business at 3060 Peachtree Road NW, Suite 1080, Atlanta, Georgia 30305.

26.     Defendant Cygnus V is a Delaware limited liability company with a principal place of business at 3060 Peachtree Road NW, Suite 1080, Atlanta, Georgia 30305.

27.     Defendant Christopher Swann resides at 325 Argonne Dr., Atlanta, Georgia, 30305 and is a purported nominee for the Board.  Swann is the President and Chief Executive Officer of Cygnus Capital.

28.     Defendant Richard Burns resides at 14395 S. Caddis Court, Jackson, Wyoming 83001 and is a purported nominee for the Board.

29.     Defendant Shannon Johnson resides at 319 Huron Street, Decatur, Georgia 30030 and is a purported nominee for the Board.

30.     Defendant William Miller, Jr. resides at 716 Vinings Estates Dr., Mableton, Georgia 30126 and is a purported nominee for the Board.

31.     Defendant Roderick Newton II resides at 2208 Sherwood Avenue, Charlotte, North Carolina 28207 and is a purported nominee for the Board.

32.     Defendant ThornTree Capital Partners LP is a Delaware limited partnership with a principal place of business at 800 Boylston Street, Suite 800E, Boston, MA 02199.

33.     Defendant ThornTree Capital Master Fund LP is a Cayman Islands limited partnership, with a principal place of business at c/o Walkers Corporate Limited, Cayman Corporate Center, 27 Hospital Road, George Town, Grand Cayman, KY1-9008.

34.     Defendant ThornTree Capital GP LLC is a Delaware limited liability company, with a principal place of business at 800 Boylston Street, Suite 800E, Boston, MA 02199.

35.     Defendant Rebecca Harvey resides at 534 Route 169, Woodstock, Connecticut 06281 and is the mother-in-law of Swann.

## JURISDICTION AND VENUE

36.     This action arises under Sections 13(d) and 14(a) of the Exchange Act, 15 U.S.C. §§ 78m(d) and 78n(a) and the applicable rules and regulations of the SEC.  This Court has personal jurisdiction over the Defendants under Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

37.     This Court has jurisdiction over the subject matter of this action, and venue in this District is proper, under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, because various acts or transactions constituting the offenses herein occurred within the Northern District of Texas.

38.    This Court has supplemental jurisdiction over Plaintiff's claims arising under state law based on 28 U.S.C. § 1367 because they derive from a common nucleus of operative fact and are so related to the federal law claims that they form part of the same case or controversy.

## FACTUAL BACKGROUND

**DEFENDANTS VIOLATED THE FEDERAL SECURITIES LAWS BY FORMING AN UNDISCLOSED 13(D) GROUP WHILE WAGING A PROXY CONTEST TO REPLACE A MAJORITY OF THE ASHFORD TRUST BOARD**

**A.    Defendants Formed A Secret 13(d) "Wolf Pack" And Accumulated A Large Stake In Ashford Trust Stock In The Midst Of A Global Pandemic**

39.    The COVID-19 pandemic has been particularly hard on Ashford Trust, since its primary business is owning and operating hotels, many of which cater to business travelers.    After the pandemic hit in March 2020, Ashford Trust's share price collapsed precipitously, and on October 30, 2020 it closed at $1.29 marking an 91.4% drop from its March 10, 2020 closing price of $15.00.    The stock price remained depressed for the duration of 2020, closing at $2.59 on December 31, 2020.    During March and April, moreover, hotel management companies employed by Ashford Trust were forced to furlough or let go approximately 91% of its workforce (8,762 employees) as government shelter-in-place and travel restrictions virtually eliminated all of its business activity.

40.    Cygnus and its "wolf pack" cohorts, ThornTree and Harvey, saw Ashford Trust's struggles, and the severe and unprecedented impact COVID-19 has had on the world, let alone the hotel industry, as an opportunity to conduct a takeover of a publicly traded company on the cheap, without paying a control premium, to the detriment and at the expense of the Company's stockholders.    Indeed, Defendants now attempt to seize control by conveying false and misleading

information to Ashford Trust's stockholders, including about the true nature of their group and their plans for the Company.

41.     By November 2020, Defendants had collectively acquired millions of shares of Ashford Trust, totaling an ownership stake of 21.3%.  As of November 9, 2020, the Cygnus Defendants had accumulated 1,535,498 shares of Ashford Trust, representing approximately 10.497% of Ashford Trust's then outstanding common stock.  At or about the same time, the ThornTree Defendants acquired 1,000,000 shares, representing an ownership stake of approximately 6.84%.  Harvey, in turn, purchased 576,000 shares of Ashford Trust stock, representing an ownership stake of approximately 3.94%.[3]

42.     In addition, the Cygnus Defendants currently hold sizeable quantities of Ashford Trust's preferred stock.   The Cygnus Defendants directly or beneficially own approximately (i) 4.6% of the Company's outstanding 8.45% Series D Cumulative Preferred Stock; (ii) 6.2% of the Company's outstanding 7.375% Series F Cumulative Preferred Stock; (iii) 6.9% of the Company's outstanding 7.375% Series G Cumulative Preferred Stock; (iv) 8.5% of the Company's outstanding 7.5% Series H Cumulative Preferred Stock; and (v) 5.5% of the Company's outstanding 7.5% Series I Cumulative Preferred Stock.  Harvey, in turn, also owns 5,000 shares of the Company's Series H preferred stock and 5,000 shares of the Company's Series I preferred stock.

---

[3] Following exchange offers (the "Exchange Offers") completed by the Company in November 2020, Defendants owned 3,164,998 shares, amounting as of December 7, 2020 to approximately 6% of Ashford Trust's then-outstanding common shares.  In light of subsequent share issuances since December 7, 2020, these shares owned collectively by the Cygnus Defendants, ThornTree Defendants, and Harvey currently amount to less than 5% of the Company's total outstanding common shares.

**B.**     **Ashford Trust's Charter Limits The Amount Of Ashford Trust Stock That May Be Owned By Individual Stockholders And Groups**

43.     Stock ownership limitations are a common feature of REITs.  To qualify as a REIT under the applicable federal income tax rules, an entity must not be closely held, *i.e.*, at any time during the last half of the taxable year, more than 50% in value of the entity's outstanding stock cannot be owned, directly or indirectly, by five or fewer individuals.  To meet these requirements, REITs typically adopt ownership limitations in their articles of incorporation or bylaws that prohibit any individual from owning more than 9.8% or 9.9% of the value of the REIT's outstanding shares and invalidate attempted transfers that result in violations of such limitations.

44.     Ashford Trust's Charter (attached hereto as Exhibit 1) has ownership limitations (the "Ownership Limitations") that apply to the Company's stockholders.  Specifically, pursuant to Article VI, Section 2(a) of the Charter, no Ashford Trust stockholder may beneficially or constructively own more than 9.8% in value of the outstanding common or preferred stock of Ashford Trust (the "Ownership Limit").  Ex. 1 (Charter), Art. VI, § 2(a).

45.     The 9.8% Ownership Limit applies to any "Person" as defined in the Charter.  A person includes "a group as that term is used for purposes of Section 13(d)(3) of the Securities Exchange Act of 1934, as amended."  *Id.*, Art. VI, § 1.

46.     The Charter provides that the Ashford Trust Board may, subject to certain conditions and limitations, "grant to any Person who makes a request therefor an exception to the Ownership Limit."  *Id.*, Art. VI, § 2.7(a).   In conferring a waiver, the Board may require the requesting stockholder to provide certain representations and undertakings to ensure that the Company does not become "closely held" or otherwise fail to qualify as a REIT, and to agree that

any violation of such representations and undertakings or attempted violation will result in application of the remedies set forth Article VI, Section 2 of the Charter.  *Id.*

47.     Given the critical importance of the Ownership Limitations to the Company's REIT status, the Charter provides a strict remedy in the event of violations: the automatic transfer of any excess shares to a designated charitable trust for the benefit of a charitable beneficiary.  Specifically, Article VI, Section 2.1(b) provides:

> If any Transfer of shares of Capital Stock . . . occurs which, if effective, would result in any Person Beneficially Owning or Constructively Owning shares of Capital Stock in violation of [the Ownership Limit] . . . then that number of shares of Capital Stock the Beneficial Ownership or Constructive Ownership of which otherwise would cause such Person to violate [the Ownership Limit] . . . shall be automatically transferred to a Charitable Trust for the benefit of a Charitable Beneficiary . . . effective as of the close of business on the Business Day prior to the date of such Transfer, and such Person shall acquire no rights in such shares of Capital Stock.

*Id.* at § 2.1(b)(i).

## C.     The Cygnus Defendants Formed A 13(d) Group With The ThornTree Defendants And Harvey To Secretly Acquire Shares In Excess Of The Ownership Limit

48.     Flagrantly violating the 9.8% Ownership Limit set forth in the Charter, Defendants' "wolf pack" secretly accumulated over 21% of the Company's common stock..  The purchases among the group appear coordinated and carefully timed to park as many shares as possible in violation of the Ownership Limit.

49.     Specifically, on November 12, 2020, the Cygnus Defendants amended their Schedule 13D, disclosing that, on November 9, 2020, they exceeded the 9.8% Ownership Limit by 113,630 shares and were holding on that date 1,535,498 total shares representing approximately 10.497% of the Company's common stock.  This filing, however, failed to disclose that the other group members also held large stakes in the Company.

50.     On November 13, 2020, the ThornTree Defendants filed a Schedule 13G with the SEC disclosing that, as of November 9, 2020, they owned 1,000,000 shares of common stock in Ashford Trust, comprising a 6.84% ownership stake.  The ThornTree Defendants' filing also failed to disclose the other members of their group.  Since inception, the ThornTree Defendants have filed a Schedule 13G for only one other company prior to their filings with respect to Ashford Trust.

51.     The ThornTree Defendants' and Cygnus Defendants' stock purchases occurred at or about the same time. They also filed Schedules 13D and 13G disclosing their respective purchases on the same date, November 9, 2020.

52.     As noted above, the ThornTree Defendants' CIO, Mark C. Moore, worked with Swann in the 1990s when Moore was Managing Partner at McKinsey & Company's Atlanta office.  Towards the end of that decade, Swann and Moore worked closely together to co-found Global Food Exchange, an Atlanta-based company.  Moore and Swann started Global Food Exchange out of Swann's Atlanta apartment in February 1999.

53.     In his Questionnaire response, Miller stated that he was "aware, through public filings that a certain affiliate of Thorntree Capital partners is invested in the Company." Despite their connection, Swann's Questionnaire made no mention of the investment in Company securities made by the ThornTree Defendants.

54.     Additionally, in his Questionnaire response, Swann disclosed *for the first time* that Harvey, his mother-in-law, holds a significant personal stake in Ashford Trust. According to Swann, Harvey owns 576,000 shares of Ashford Trust common stock, 5,000 shares of Ashford Trust Series H preferred stock, and 5,000 shares of Ashford Trust Series I preferred stock.  Harvey's common shares, as of November 9, 2020, would have constituted approximately 4% of then-outstanding common shares.  In addition, the Purported Nominees' Questionnaire

responses included a list of "Cygnus Entities and Investors" that revealed, for the first time, that Harvey is an investor in and party to an agreement relating to securities with one or more Cygnus entities.

55.     In his Questionnaire response, Swann also takes the absurd position that he is not coordinating in any way with his 79-year-old mother-in-law who has no previous shareholder activist background or experience.  In Swann's own words:  "I am aware that my mother in law owns shares of AHT common stock but I do not have beneficial ownership over these shares – I have no voting or dispositive power over these shares, nor does she live in my household."  The assertion is simply not credible.

56.     The Cygnus Defendants, ThornTree Defendants, and Harvey all substantially increased their stakes in Ashford Trust around the same time period, with Harvey acquiring approximately 299,500 of her shares after September 9, 2020 and the ThornTree Defendants acquiring all 1,000,000 of their shares after September 30, 2020.

57.     Section 13(d) of the Exchange Act requires any person who directly or indirectly becomes the beneficial owner of more than 5% of a class of securities to file a Schedule 13D with the SEC, and disclose (among other facts) the identity of each filing person, the number of shares that it beneficially owns, its purpose in acquiring those shares, and any plans or proposals with respect to the issuer or its shares.

58.     Section 13(d)(3) states "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a "person" for the purposes of this subsection."  15 U.S.C. § 78m(d)(3).

59.     SEC Rule 13d-5 defines beneficial ownership by a group: "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of

equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons."

60.     These provisions alert the marketplace to every large, rapid aggregation or accumulation of securities that might represent a potential shift in corporate control.   The provisions protect investors by enabling them to receive the facts necessary for informed investment decisions.

61.     The "key inquiry" for purposes of Section 13(d) is "whether [Defendants] agree[d] to act together for the purpose of acquiring, holding, voting or disposing of [Plaintiff's] common stock."[4]  While there must be an agreement to act for a common purpose before a "group" can be said to have formed, the requisite agreement need not be formal or explicit.[5]  "The agreement may be formal or informal and may be proved by direct or circumstantial evidence."[6] Moreover, the group members need not be committed to "acquiring, holding, voting, or disposing of equity securities" on certain specified terms, but rather "they need only have combined to further a common objective regarding one of the just-recited activities."[7]  Whether an agreement has been formed is "a complex factual finding" that "cannot be reduced to a checklist."[8]

62.     Factors that weigh in favor of or are indicia of group formation include: (i) coordinated stock purchases combined with "plus factors," such as a shareholder making its purchase of stock on the basis of a loan from another group member, group members acting through one member "as their common agent," and the group acquiring its shares simultaneously

---

[4] *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 123-24 (2d Cir. 2001).

[5] *See Roth v. Jennings*, 489 F. 3d 499, 508 (2d Cir. 2007).

[6] *Morales*,  249 F.3d at 124.

[7] *Id.*  at 124-24.

[8] *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F. 3d 613, 618 (2d Cir. 2002).

in identical transactions;[9] (ii) voting agreements;[10] and (iii) exertion of significant influence and control over other group members.[11]

63.     At all relevant times, the Cygnus Defendants, ThornTree Defendants, and Harvey have acted together "for the purpose of acquiring, holding, voting or disposing" of their shares of Ashford Trust stock and thus constitute a group within the meaning of Section 13(d) of the Exchange Act and Rule 13d-5 promulgated thereunder.

64.     Collectively, as of November 9, 2020, the Cygnus Defendants, Harvey, and the ThornTree Defendants owned approximately 3,111,498 shares of Ashford Trust common stock, representing 21.3% of the outstanding common shares—approximately 1,689,630 shares and 11.5% above the 9.8% Ownership Limit.

**D.     Defendants Concealed Their Group Status From Ashford Trust In Requesting A Limited Waiver From The Ownership Limitations**

65.     Unaware of the secret 13(d) group because of the Cygnus Defendants' silence, on December 8, 2020, the Board granted the Cygnus Defendants a limited waiver of the Ownership Limit.  Under the terms of the limited waiver, the Cygnus Defendants were permitted to acquire up to 15%, in the aggregate, of the Company's outstanding common shares.  The Cygnus Defendants, however, intentionally concealed the ownership stakes of their fellow group members to obtain the limited waiver, ownership stakes that threatened to cause grave harm to the Company and its stockholders by potentially jeopardizing the Company's REIT status.

66.     Because the Cygnus Defendants obtained the waiver under false pretenses, it is wholly invalid.  Never once did the Cygnus Defendants reveal that they were working in

---

[9] *See Roth*, 489 F.3d at 512; *Champion Parts Rebuilders Inc. v. Cormier Corp.*, 661 F. Supp. 825 (N.D. Ill 1987); *Gen. Aircraft Corp. v. Lampert*, 556 F.2d 90, 95 (1st Cir. 1977).

[10] *See Water & Wall Assocs., Inc. v. Am. Consumer Indus., Inc.*, No. 99-73, 1973 WL 383, at *4-6 (D.N.J. Apr. 19, 1973); *Simon Prop. Grp. v. Taubman Ctrs., Inc.*, 240 F. Supp. 2d 642, 650 (E.D. Mich. 2003).

[11] *See S.E.C. v. Savoy Indus.*, 587 F.2d 1149, 1164-65 (D.C. Cir. 1978).

concert with the other Defendants to accumulate a major block of shares and try to overtake the Company.  Had the Board known of Defendants' group at the time, it would never have granted the limited waiver.

67.     Moreover, by its terms, the waiver only applied to the Cygnus Defendants, not the group.  Article VI, Section 2.7(a) of the Charter only permits the Board to issue waivers to a "Person who makes a request therefor."  A "Person" is defined to include a "group" within the meaning of Section 13(d) of the Exchange Act.  Because Defendants' group did not request or receive a waiver, the waiver obtained by Cygnus was null and void.

68.     And even assuming the waiver for Cygnus to own up to 15% was valid, the group's  21.3% accumulation exceeds this threshold by 6.3%—or approximately 920,000 shares.

69.     At the time the Cygnus Defendants, ThornTree Defendants, and Harvey exceeded the 9.8% mark, the Charter provisions immediately divested them of any excess shares beyond that limit.  As of November 9, 2020, the Cygnus Defendants, ThornTree Defendants, and Harvey owned excess shares of approximately 1,689,630[12] which ,pursuant to Article VI, Section 2.1(b) of the Charter, were "automatically transferred to a Charitable Trust . . . effective as of the close of business on the Business Day prior to the date of such Transfer."

70.     In the Nomination Notice, Swann purported to be the record owner of 121,000 shares of Ashford Trust stock.  Because of Defendants' violations, however, all such shares had been automatically transferred to the charitable trust set forth in the Charter.  Swann therefore was not a record owner of any shares of Ashford Trust common stock on the date of submission of the Nomination Notice.

---

[12]   Although Defendants' holdings as a percentage of outstanding common stock subsequently became reduced as a result of the Exchange Offers, the operative time of the automatic transfer was the date of the violation, *i.e.*, November 9, 2020.

**E.** **Defendants Violated Sections 13(d) And 14(a) Of The Exchange Act By Failing To Disclose Their Group Status In Their SEC Filings And Proxy Solicitations**

71.     Despite collectively owning over 5% of Ashford Trust common shares in November and December of 2020, the Cygnus Defendants, ThornTree Defendants, and Harvey failed to disclose their status as a 13(d) group as required on Schedule 13D or any amendment thereto.  Moreover, the Cygnus Defendants and Harvey currently own in excess of 5% of Ashford Trust Series H and I preferred stock, but they have not filed a Schedule 13D disclosing their group status.

72.     Further, on January 5, 2021, the Cygnus Defendants issued a press release and a public letter to Ashford Trust stockholders disclosing that they had submitted a notice of nomination and urging Ashford Trust stockholders to vote for their purported nominees at the Annual Meeting.  The press release and public letter failed to identify the ThornTree Defendants or Harvey as members of the group with the Cygnus Defendants or as participants in their solicitation.

73.     The Cygnus Defendants' press release and public letter were reasonably calculated to result in the procurement, withholding, or revocation of a proxy and thus constituted "solicitations"  under Section 14(a) of the Exchange Act and the rules and regulations thereunder. 17 C.F.R. § 240.14a-1(l)(1)(iii).

74.     Rule 14a-9 requires that "[n]o solicitation subject to this regulation shall . . .  contain[] any statement, which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]"  17 C.F.R. § 240.14a-9.

75.     Under Rule 14a-12, a nominating stockholder must provide with respect to each member of the nominating group, "a description of their direct or indirect interests, by security holdings or otherwise, or a prominent legend in clear, plan language advising security holders where they can obtain that information."  17 C.F.R. § 240.14a-12.

76.     The Cygnus Defendants' press release and public letter, which were filed with the SEC, violated Rules 14a-9 and 14a-12 by omitting material information that the ThornTree Defendants and Harvey are members of a group and participants in the solicitation along with the Cygnus Defendants.

## DEFENDANTS VIOLATED THE FEDERAL SECURITIES LAWS AND BYLAWS BY CONCEALING CRITICAL INFORMATION ABOUT THEIR PURPORTED NOMINEES AND PLANS AND PROPOSALS FOR THE COMPANY

### F.    The Company's Bylaws Contain Mandatory Advance Notice Requirements For The Nomination Of Director Candidates

77.     Ashford Trust's Advance Notice Requirements are set forth in Article I, Section 11 of the Bylaws (attached hereto as Exhibit 2), which is entitled "Advance Notice of Stockholder Nominees for Director and Other Stockholder Proposals."  Ex. 2 (Bylaws), Art. 1, § 11.  The Advance Notice Requirements permit stockholders of record—*i.e.*, individuals or entities in whose name the shares are registered—to nominate director candidates under certain circumstances.  Among other things, the stockholder must be "a stockholder of record both at the time of giving of notice by the stockholder as provided for in . . . Section 11(a) and at the time of the annual meeting, who is entitled to vote at the meeting."  *Id.*, Art. 1, § 11(a)(1).

78.     The Advance Notice Requirements mandate that a qualifying stockholder give "timely notice" for the nominations to be brought before an annual meeting.  To be timely, the notice "shall set forth all information required under [] Section 11" of the Company's Bylaws. *Id.*, Art. 1, § 11(a)(2).  The Company must receive the notice not less than 90 days and not more

than 120 days prior to the first anniversary of the date of the proxy statement for the preceding year's annual meeting. *Id.*

79.     Section 11(a)(3) of the Bylaws sets forth the information that a nominating stockholder must include in the notice.  Among other things, the notice must disclose, for each proposed nominee, "all information relating to the Proposed Nominee that would be required to be disclosed in connection with the solicitation of proxies for the election of the Proposed Nominee as a director in an election contest . . . or would otherwise be required in connection with such solicitation, in each case pursuant to Regulation 14A (or any successor provision) under the Exchange Act." *Id.*, Art. 1, § 11(a)(3)(i).

80.     The Advance Notice Requirements require the nominating stockholder to submit a "completed Proposed Nominee questionnaire." *Id.*, Art. 1, § 11(a)(4).  The Questionnaire must include all information that: (i) "would be required to be disclosed in connection with the solicitation of proxies for the election of the Proposed Nominee as a director in an election contest"; (ii) "would otherwise be required in connection with such solicitation . . . pursuant to Regulation 14A . . . under the Exchange Act and the rules thereunder"; or (iii) "would be required pursuant to the rules of any national securities exchange on which any securities of the Corporation are listed." *Id.*

81.     Regulation 14A, incorporated into the Advance Notice Requirements, provides detailed disclosure requirements.  In particular, Regulation 14A requires:  (i) full disclosure of the nominee's plans "with respect to any future transaction to which the [company] or its affiliates will or may be a party," 17 C.F.R. § 240.14a-101, Item 5(b)(1)(xii)(B); and (ii) full disclosure of any information necessary to make the statements made "not [materially] false or misleading."  17 C.F.R. § 240.14a-9(a).

82.     The Advance Notice Requirements provide that if any information submitted by a nominating stockholder is inaccurate in any material respect, such information "may be deemed not to have been provided in accordance with the [Advance Notice Requirements]." Ex. 2 (Bylaws), Art. I, § 11(c)(1).

83.     Under the Advance Notice Requirements, "[o]nly such individuals who are nominated in accordance with [the Advance Notice Requirements] shall be eligible for election by stockholders as directors[.]" *Id.*, Art. 1, § 11(c)(2).

84.     In addition to requiring the above information, the Advance Notice Requirements provide that "a stockholder shall also comply with all applicable requirements of state law and of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth in this Section 11." *Id.*, Art. 1, 11(c)(4).

85.     At all relevant times, Defendants had, and had access to and awareness of, the Advance Notice Requirements and Bylaws themselves.

## G.     **The Cygnus Defendants Have Publicly And Repeatedly Called For Ashford Trust To Explore A Merger, Asset Sale, And Other Strategic Alternatives**

86.     On September 17, 2020, the Cygnus Defendants published an open letter to Ashford Trust's stockholders opining that, instead of undertaking exchange offers, the Company should explore various strategic alternatives, including (i) "orderly asset sales"; (ii) a "refinancing of assets"; (iii) "raising additional short term debt"; (iv) a "merger with or sale to a stronger REIT"; (v) "a rights offering to the common stockholders"; (vi) "further reductions in expenses at AHTs hotel assets"; and (vii) evaluation of more drastic actions such has foregoing REIT status or cancelling AHT's management contract with AINC [Ashford Inc.] to preserve value for common stockholders."

87.     Between September 23 and October 22, 2020, the Cygnus Defendants issued a series of five open letters reiterating the same proposals:  (i) "Sell to a Stronger REIT"; (ii) "Take on 'Bridge Loan' at AHT Corporate Level"; (iii) "Hold a Rights Offering for Common Stockholders"; and (iv) "Reduce/Forbear Fees to AINC."

88.     On October 27, 2020, the Cygnus Defendants issued a press release proposing that Ashford Trust (i) "significantly reduce [Ashford Trust's] cost structure, including to reduce or eliminate the fees payable to AINC and other related parties"; (ii) "explore a sale to a stronger REIT"; (iii) "obtain a bridge loan at [Ashford Trust's] corporate level to weather the current COVID-19 related crisis"; and (iv) "undertake a rights offering that could raise capital without diluting existing common stockholders."

## H.     The Cygnus Defendants' Nomination Materials Violate The Advance Notice Requirements

89.     As set forth above, the Nomination Materials delivered by Swann to Ashford Trust on December 31, 2020, included a Notice of Nomination, seeking to nominate the Individual Defendants for election to the Board at Ashford Trust's 2021 Annual Meeting, and Questionnaires completed by the Individual Defendants.  Defendants have not corrected, amended, or supplemented the Nomination Materials since delivering them to Ashford Trust on December 31, 2020.

90.     The Nomination Materials failed to disclose information that must be provided under the Advance Notice Requirements, and did not provide complete and accurate responses to each of the Questions in the Questionnaire.

### 1.     The Cygnus Defendants' Nomination Materials Fail To Disclose Plans And Proposals For Ashford Trust

91.     Question 1(l) of the Questionnaire required each purported nominee to disclose its "plans or proposals" for the Company, including regarding a "change of control of the

Company," a "sale of the Company," or "the sale or other disposition of any of the Company's assets or equity securities to one or more third parties."   Question 1(l) also broadly requested information concerning plans or proposals to "change the advisory structure or the investment policies of the Company," "any changes to the Company's leadership or business strategy," and "any other plans, strategies or objectives with respect to the Company or its investment in the Company's equity securities."

92.     The Questionnaires submitted by the Individual Defendants failed to disclose _any_ of their specific plans or proposals for the Company.   In fact, Questionnaires completed by Defendants Burns, Johnson, Miller, and Newton each stated that they "do not have any specific plans or proposals for the Company at this time."   The Questionnaire submitted by Swann stated that he "currently [has] no plans or proposals regarding a change of control of the Company, including to sell the Company's assets or equity securities to one or more third parties."

93.     The Individual Defendants' Questionnaire answers were incomplete, and the information provided was demonstrably and intentionally false and misleading.   Contrary to their representations, the Individual Defendants do have specific plans and proposals that they intend to advance if elected to the Ashford Trust Board.   The Individual Defendants' undisclosed plans and proposals include one or more of the plans or proposals discussed in the Cygnus Defendants' numerous open letters and press releases.   The Individual Defendants' Questionnaires flatly contradict these open letters, revealing their true intent and the motivations underpinning the proxy strategy.

**2.     The Nomination Materials Fail To Disclose Information Concerning Related Persons**

94.     The Questionnaire sought various information concerning "Related Persons" who include "(i) any Affiliate or Associate of such person, (ii) any holder of equity

securities or partnership interests of such person or such person's Affiliates, (iii) the employer of such person, (iv) any Affiliate of such person's employer, and (v) if such person is being nominated as a director of [Ashford Trust], the person or entity making the nomination, any Affiliate of such nominating person or entity and any holder of equity securities or partnership interests of such person or entity making the nomination or of any Affiliate of such nominating person or entity."

95.     The Questionnaires submitted by the Individual Defendants included almost none of the requested information concerning "Related Persons."

96.     Question 1(l) required the Individual Defendants to disclose the names and addresses all of "Related Persons"—which includes "the employer of such person," "any Affiliate of such person's employer," and any organization of which the person is "directly or indirectly, the beneficial owner of 10% or more of any class of equity securities." The Individual Defendants' responses failed to identify any affiliates of the Individual Defendants' employers. Miller disclosed that he has served as CEO of CRH Healthcare LLC since 2012, but failed to disclose the names and addresses of the investors and/or members of CRH Healthcare LLC. Swann also failed to disclose the ThornTree Defendants as Related Persons despite their relationship as members of a 13(d) group.

97.     With respect to limited partners that are Related Persons, Question 1(l) required the disclosure of "the amount invested by such limited partner and the percentage of partnership interests owned by such limited partner." The Individual Defendants, however, failed to identify the ownership amount and percentage of the fund for any of the Cygnus limited partners.

### 3.      The  Nomination  Materials  Fail  To  Disclose  Certain  Information Required Under Regulation 14A

98.      The  Nomination  Materials  violated  the  Advance  Notice  Requirements because they failed to provide all required information under Regulation 14A.  *See* Ex. 2 (Bylaws), Art. I, § 11(a)(3)(i).

99.      Item  5(b)(1)(xii)  of  Regulation  14A  also  requires  disclosure  of  "any arrangement or understanding with any person . . . with respect to any future transactions to which the registrant or any of its affiliates will or may be a party."  Defendants' failure to disclose their specific plans or proposals for the Company, including with respect to a merger, sale of assets, or refinancing, constitutes an independent violation of Item 5(b)(1)(xii).

100.      The  Nomination  Materials  also  failed  to  describe  Johnson's  present occupation or employment, in violation of Item 5(b)(1)(ii) of Regulation 14A.

101.      The  Company's  Bylaws  do  not  permit  the  Cygnus  Defendants  to  cure deficiencies in the Nomination Materials after the nomination deadline.  Under the Advance Notice Requirements, a nominating stockholder must submit any such materials at least 90 days prior to the first anniversary of the date of the proxy statement for the preceding year's annual meeting, *i.e.*, January 1, 2020.  Ex. 2 (Bylaws), Art. I, § 11(a)(2).  Because that deadline has passed, the Nomination Materials are now final and not subject to revision.

### I.      The  Cygnus  Defendants  Violated  Federal  Securities  Laws  By  Failing  To Disclose Their Plans And Proposals On Schedule 13D

102.      Defendants'  actions  also  violate  federal  securities  laws  because,  despite their public criticisms and statements regarding their plans for the Company, their securities filings wholly omit information regarding their planned takeover.

103.    Section 13(d) of the Exchange Act requires a person who acquires an interest in more than 5% of certain classes of an issuer's securities to file required disclosures with the SEC on Schedule 13D.  15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-101.

104.    Item 4 of Schedule 13D requires the filer to disclose the purpose of acquiring the issuer's securities and "any plans or proposals" relating to, among other things, "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the issuer or any of its subsidiaries," "[a] sale or transfer of a material amount of assets of the issuer or any of its subsidiaries," "[a]ny material change in the present capitalization or dividend policy of the issuer," and "[a]ny action similar to any of those enumerated above."  17 C.F.R. § 240.13d-101(b), (c), (e), (j).

105.    On September 18, 2020, the Cygnus Defendants filed a Schedule 13D with the SEC announcing their ownership of Ashford Trust stock.  Since then, the Cygnus Defendants have filed nine amendments to their Schedule 13D with the SEC.

106.    On January 5, 2021, the Cygnus Defendants filed a Schedule 13D/A (Amendment No. 9) with the SEC announcing Swann's submission of the Nomination Materials and the Cygnus Defendants' press release concerning the candidacies of the Individual Defendants. The Schedule 13D/A did not disclose any specific plans or proposals for the Company.

107.    The disclosures on the Cygnus Defendants' January 5, 2021 Schedule 13D/A were incomplete and misleading.  The Cygnus Defendants failed to disclose in that filing that they have specific plans and proposals for the Company, which in part serve as the impetus for seeking to nominate the Individual Defendants for election to the Board.  In particular, the Cygnus Defendants intend to use their position, influence, and relationship with the Individual Defendants to advance one or more of the following plans and proposals—without regard to the best interests of Ashford Trust or its stakeholders including other investors:  (i) "orderly asset

sales"; (ii) a "refinancing of assets"; (iii) "raising additional short term debt"; (iv) a "merger with or sale to a stronger REIT"; (v) "a rights offering to the common stockholders"; (vi) "further reductions in expenses at AHTs hotel assets or evaluation of more drastic actions such as foregoing REIT status"; and (vii) "cancelling AHT's management contract with AINC."

**J.      The Board Properly Exercised Its Business Judgment To Reject The Nomination Notice**

108.    Upon receipt, the Nomination Materials were provided to the Nominating and Corporate Governance Committee (the "Nominating Committee") of the Company's Board for review.  In consultation with its legal advisors, the Nominating Committee carefully reviewed the Nomination Materials and found them to be deficient because they contained numerous material misstatements, inaccuracies, and omissions, and therefore, were not provided in accordance with the Advance Notice Requirements in Ashford Trust's Bylaws.

109.    In light of the serious deficiencies, the Nominating Committee, in the exercise of its business judgment, determined that the Purported Nominees are not eligible to stand for election at Ashford Trust's 2021 Annual Meeting of Stockholders.

110.    Upon a recommendation by the Nominating Committee, the Board likewise resolved that the Individual Defendants' refusal to comply with the Advance Notice Requirements rendered them ineligible for election.

111.    The Nominating Committee and Board notified Cygnus of their decision on January 19, 2021.

**K.      Defendants' Actions Have And Will Continue To Irreparably Harm Ashford Trust And Its Stockholders**

112.    Due to Defendants' violations of the Advance Notice Requirements and Section 13(d) and 14(a) of the rules and the rules and regulations promulgated thereunder, Ashford

Trust and its stockholders have been, and will continue to be, irreparably harmed in the following respects:

(a)     Ashford Trust's stockholders are being deprived of the opportunity to meaningfully evaluate director nominations;

(b)     Defendants have been allowed to improperly accumulate a sizeable position in Ashford Trust stock; and

(c)     Defendants have been allowed to conceal their true intentions for Ashford Trust, including to force a quick merger, sale of assets, or refinancing, to the detriment of Ashford Trust's stockholders; and

113.    Ashford Trust also is threatened with irreparable harm in light of Defendants' intention to communicate with other stockholders concerning the candidacies of the Individual Defendants, despite the fact that they are ineligible to be elected to the Ashford Trust Board at the 2021 Annual Meeting.  Given Defendants' material misrepresentations and omissions, on information and belief, Defendants will continue to misrepresent to other stockholders that the Individual Defendants are eligible for election to the Ashford Trust Board.   Once such communications are made, Ashford Trust will be irreparably harmed.

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Violation of Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-101)**

114.    Ashford Trust hereby incorporates the allegations contained in paragraphs 1-113 as if fully set forth herein.

115.    Section 13(d) of the Exchange Act requires that investors acting as a group for the purpose of acquiring, holding, or trading the stock of an issuer disclose the group's existence and make plain their intentions through a Schedule 13D within ten days after group members collectively acquire the beneficial ownership of 5% or more of the issuer's stock.

116.    Rule 13d-5(b)(1) provides that when two or more persons agree to act together for the purpose of acquiring, holding, voting, or disposing of the issuer's stock, the group shall be deemed to have acquired beneficial ownership for purposes of Section 13(d) of the Exchange Act.

117.    Item 4 of Rule 13d-101 provides that the reporting person must state the purpose for acquiring the issuer's stock, including describing any plans or proposals (i) to acquire additional stock or to sell it; (ii) to engage in "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation"; (iii) to sell or transfer a "material amount of assets" of the issuer; or (iv) to propose any change to the present board of directors or management of the issuer. 17 C.F.R. § 240.13d-101.

118.    The Cygnus Defendants, ThornTree Defendants, and Harvey are acting as a group within the meaning of Rule 13d-5 and collectively were the beneficial owners of more than five percent of Ashford Trust's common stock.

119.    Additionally, the Cygnus Defendants and Harvey are currently the beneficial owners of more than five percent of Ashford Trust's Series H preferred stock and Series I preferred stock.

120.    Despite the formation of a group, the Cygnus Defendants, ThornTree Defendants, and Harvey did not file a Schedule 13D with the SEC, and thus failed to make the full and fair disclosure required by the Exchange Act and the Rules.  Among other things, they have failed to disclose (i) that they are members of a group pursuant to Section 13(d); (ii) their collective beneficial ownership of Ashford Trust's common stock; and (iii) any common arrangements or understandings.

121.    In failing to file a Schedule 13D, the ThornTree Defendants and Harvey have not made any of the disclosures that Schedule 13D requires, including any plans and

proposals (i) to acquire additional stock or to sell it; (ii) to engage in a "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation"; and (iii) to sell or transfer a "material amount of assets" of the issuer.

122.     Rule 13d-1(b)(1)(i) provides that a person may only file a Schedule 13G if the person "has acquired such securities in the ordinary course of his business and not with the purpose nor with the effect of changing or influencing the control of the issuer[.]"

123.     ThornTree Defendants filed a Schedule 13G on November 13, 2020, despite purchasing Ashford Trust stock with the purpose and effect of changing or influencing the control of Ashford Trust through their relationship with the Cygnus Defendants and Harvey.

124.     Accordingly, the Cygnus Defendants, the ThornTree Defendants, and Harvey have violated, and continue to violate Section 13(d) of the Exchange Act and Rule 13d-1.

125.     Ashford Trust has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Violation of Section 14(a) of the Exchange Act and Rules 14a-9 and 14a-12)**

126.     Ashford Trust hereby incorporates the allegations contained in paragraphs 1-125 as if fully set forth herein.

127.     Rule 14a-9 under the Exchange Act, 17 C.F.R. § 240.14a-9, prohibits making a solicitation "by means of any . . . communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."

128.     Rule 14a-3 requires that each person solicited shall be concurrently or previously furnished with a publicly-filed preliminary or definitive proxy statement containing the information specified in Schedule 14A.

129.     Rule 14a-12 provides that a solicitation may be made before furnishing a proxy statement if each written communication includes the identity of the participants in the solicitation and "a description of their direct or indirect interests, by security holdings or otherwise, or a prominent legend in clear, plain language advising security holders where they can obtain that information[.]"  17 C.F.R. § 240.14a-12.

130.     Defendants' January 5, 2021 press release and open letter to stockholders filed with the SEC and communicated to Ashford Trust stockholders constitute solicitations within the meaning of Rule 14a-9, pursuant to the definition in Rule 14a-1(l), 17 C.F.R. § 240.14a-1(l).

131.     By failing to disclose that the Cygnus Defendants, ThornTree Defendants, and Harvey are acting as a group within the meaning of Rule 13d-5 to wage a proxy campaign, Defendants' solicitations are false or misleading with respect to a material fact, or omitted to state a material fact necessary in order to make the statements therein not false or misleading.

132.     Because the ThornTree Defendants and Harvey are participants in Defendants' proxy solicitation, Defendants were required to disclose their direct or indirect interest Ashford Trust's stock in their soliciting materials pursuant to Rule 14a-12.

133.     Accordingly, Defendants violated Section 14(a) of the Exchange Act and Rules 14a-9 and 14a-12.

134.     Ashford Trust has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### (Violation of Section 13(d) of the Exchange Act and Rule 13d-101 thereunder)

135.     Ashford Trust hereby incorporates the allegations contained in paragraphs 1 through 134 as if fully set forth herein.

136.     Section 13(d) of the Exchange Act requires certain disclosures to be filed on a Schedule 13D by a person that acquires an interest in more than 5% of certain classes of securities.  15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-101.

137.     Item 4 of Rule 13d-101 provides that the reporting person must state the purpose for acquiring the issuer's stock, including describing any plans or proposals (i) to acquire additional stock or to sell it; (ii) to engage in a "[a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation"; and (iii) to sell or transfer a "material amount of assets" of the issuer.

138.     As set forth above, the Cygnus Defendants' January 5, 2020 Schedule 13D/A fails to make the full and fair disclosure required by the Exchange Act and the rules promulgated thereunder, including, but not limited to, failing to disclose their plans and proposals for Ashford Trust with respect to asset sales, refinancing of assets, raising additional short term debt, and a merger.

139.     By reason of the foregoing, Defendants violated Section 13(d) of the Exchange Act and Rule 13d-101 promulgated thereunder.

140.     Ashford Trust has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
**(Declaratory Judgment That The Cygnus Defendants' Slate Of Purported Nominees Is Invalid Due To Defendants' Violations Of Ashford Trust's Bylaws)**

141.     Ashford Trust hereby incorporates the allegations contained in paragraphs 1-140 as if fully set forth herein.

142.     The Advance Notice Requirements are unambiguous and valid under applicable law.

143.     The Advance Notice Requirements require stockholders to provide "timely notice" for stockholder nominations to be brought properly before an annual meeting.  To be

timely, the stockholder's notice "shall set forth all information required under [] Section 11" of the Company's Bylaws.

144.    The Advance Notice Requirements further require that a stockholder's notice be accompanied by a "completed Proposed Nominee questionnaire."  The questionnaire must include all information regarding each proposed nominee that (1) "would be required to be disclosed in connection with the solicitation of proxies for the election of the Proposed Nominee as a director in an election contest," (2) "would otherwise be required in connection with such solicitation . . . pursuant to Regulation 14A . . . under the Exchange Act and the rules thereunder," or (3) "would be required pursuant to the rules of any national securities exchange on which any securities of the Corporation are listed."

145.    The Advance Notice Requirements provide that "[o]nly such individuals who are nominated in accordance with [the Advance Notice Requirements] shall be eligible for election by stockholders as directors[.]"

146.    The Advance Notice Requirements further mandate that "a stockholder shall also comply with all applicable requirements of state law and of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth in this Section 11."

147.    Defendants have failed to provide information required under the Advance Notice Requirements.  In particular, Defendants (i) failed to disclose their plans and proposals for Ashford Trust and its assets if the Proposed Nominees are elected to the Ashford Trust Board; (ii) failed to disclose information concerning "Related Persons" of the Individual Defendants; and (iii) failed to disclose the present occupation or employment of Johnson, as required under Item 5(b)(1)(ii) of Regulation 14A.

148.    In light of Defendants' violations of the federal securities laws, including Sections 13(d) and 14(a) of the Exchange Act, Defendants also have violated the Advance Notice

Requirements' mandate to comply with "all applicable requirements of state law and of the Exchange Act and the rules and regulations thereunder."

149.     Upon Defendants' violations of the Company's Ownership Limitations, all shares previously owned of record by Swann were automatically transferred to the charitable trust as provided in the Charter.  Accordingly, Swann was not a record owner of shares of common stock on the date of submission of the Nomination Notice, in violation of the Advance Notice Requirements.

150.     Given Defendants' violations of the Advance Notice Requirements, the Nomination Materials are invalid and Defendants are not entitled to nominate individuals, including the Individual Defendants, to stand for election to the Board at the 2021 Annual Meeting.

151.     There is a real and justiciable controversy between Ashford Trust and Defendants.

152.     If declaratory judgment is not given and the Individual Defendants are permitted to stand for election, the rights of Ashford Trust and its stockholders will be adversely affected and they will suffer irreparable harm.

153.     Ashford Trust is entitled to a declaratory judgment that (i) Defendants' Nomination Notice is invalid due to Defendants' failure to comply with the Advance Notice Requirements; and (ii) as a result, Defendants' slate of purported nominees is invalid and ineligible to stand for election by the stockholders as directors of Ashford Trust.

### FIFTH CLAIM FOR RELIEF
**(Declaratory Judgment That The Cygnus Defendants Cannot Cure Their Violations Of Ashford Trust's Bylaws and Are Barred From Nominating Directors At The 2021 Annual Meeting)**

154.     Ashford Trust hereby incorporates the allegations contained in paragraphs 1-153 as if fully set forth herein.

155.    The Advance Notice Requirements are unambiguous and valid under applicable law.

156.    The Advance Notice Requirements provide that if any information submitted by a Nominating Stockholder is inaccurate in any material respect, such information may be deemed not to have been provided in accordance with the Advance Notice Requirements.

157.    The Advance Notice Requirements also impose an obligation on Nominating Stockholders to notify the Company of any inaccuracy or material change within two business days of becoming aware of such inaccuracy or material change.

158.    The Advance Notice Requirements provide that only individuals who are nominated in accordance with the Advance Notice Requirements shall be eligible for election as directors.

159.    Defendants have failed to comply with the Advance Notice Requirements because (i) the Nomination Materials do not disclose all information required under the Advance Notice Requirements; (ii) Defendants have violated the federal securities laws; and (iii) Swann was not a record owner of shares on the date of submission of the Nomination Notice.

160.    Pursuant to the Advance Notice Requirements, the deadline for nominating director candidates for election to the Board at the 2021 Annual Meeting was January 1, 2021. Accordingly, the Cygnus Defendants' non-compliance cannot be cured, and the Cygnus Defendants are barred from nominating individuals for election to the Board at the 2021 Annual Meeting.

161.    There is a real and justiciable controversy between Ashford Trust and Defendants.

162.    If a declaratory judgment is not given and the Individual Defendants are permitted to stand for election for the Ashford Trust Board on the basis of the belated delivery of

the information required by the Advance Notice Requirements, the rights of Ashford Trust and its stockholders will be adversely affected and they will suffer irreparable harm.

163.    Ashford Trust is entitled to a declaratory judgment that Defendants cannot cure their violations of the Advance Notice Requirements.

### SIXTH CLAIM FOR RELIEF
**(Declaratory Judgment That All Shares Owned By Defendants In Violation of Ownership Limitations Were Automatically Transferred To A Charitable Trust, and That Swann Was Not A Record Holder of Shares On December 31, 2020)**

164.    Ashford Trust hereby incorporates the allegations contained in paragraphs 1-163 as if fully set forth herein.

165.    The Ownership Limitations as set forth in the Company's Charter are unambiguous and valid under applicable law.

166.    The Ownership Limitations provide that no Ashford Trust stockholder may beneficially or constructively own in excess of the Ownership Limit or more than 9.8% in value of the outstanding common or preferred stock of Ashford Trust.

167.    The Ownership Limit applies to any "Person" as defined in the Charter, which includes "a group as that term is used for purposes of Section 13(d)(3) of the Securities Exchange Act of 1934, as amended."

168.    The Charter provides that shares acquired in excess of the Ownership Limit shall be automatically transferred to a charitable trust under Article VI, Section 2.1(b)(i) thereof.

169.    The Charter also provides that the Ashford Trust Board may, subject to certain conditions and limitations, grant exceptions or waivers to the Ownership Limit.   In conferring a waiver, the Board may require the requesting stockholder to provide certain representations and undertakings to ensure that the Company does not become "closely held" or otherwise fail to qualify as a REIT, and to agree that any violation of such representations and

undertakings or attempted violation will result in application of the remedies set forth Article VI, Section 2 of the Charter.

170.    Defendants have failed to comply with the Ownership Limitations, because, as of November 9, 2020, the Cygnus Defendants, ThornTree Defendants, and Harvey secretly formed a 13(d) group collectively owning approximately 3,111,498 shares of Ashford Trust common stock, representing 21.3% of the outstanding common shares.

171.    The limited waiver obtained by the Cygnus Defendants on December 8, 2020 was not effective and did not excuse Defendants' prior violations of the Ownership Limitations, including because (i) the limited waiver was obtained on the basis of false representations; the limited waiver by its terms did not seek or confer a waiver upon a group consisting of the Cygnus Defendants, ThornTree Defendants, and Harvey; and (iii) the limited waiver only applied to ownership of up to 15% of outstanding shares, but the Cygnus Defendants, ThornTree Defendants, and Harvey collectively owned as much as 21.3% - approximately 1,689,630 shares and 11.5% above the 9.8% Ownership Limit.

172.    . Pursuant to the Charter, all such shares that exceeded the Ownership Limit were automatically transferred to the charitable trust set forth in the Charter.

173.    In the Nomination Notice, Swann purported to be the record owner of 121,000 shares of Ashford Trust stock.  As a result of Defendants' violations, all such shares were automatically transferred to the charitable trust set forth in the Charter.

174.    Accordingly, in violation of the Advance Notice Requirements, Swann was not a record owner of shares on December 31, 2020, the date of submission of the Nomination Notice, and Swann's Notice of Nomination was invalid.

175.    There is a real and justiciable controversy between Ashford Trust and Defendants.

176.    Ashford Trust is entitled to a declaratory judgment that all shares owned by Defendants in violation of the Ownership Limitations were automatically transferred to a charitable trust, and that Swann was not a record holder of shares on December 31, 2020.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ashford Trust respectfully requests that the Court enter judgment against Defendants as follows:

(a)    Declaring that the Cygnus Defendants' Schedule 13D and the amendments thereto violate Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-101 promulgated thereunder;

(b)    Declaring that Defendants' proxy solicitations violate Section 14(a) of the Exchange Act and Rules 14a-9 and 14a-12 promulgated thereunder;

(c)    Ordering Defendants to amend and correct by public means the misrepresentations and omissions in their Schedule 13D, proxy materials, and the amendments related thereto, including their failure to disclose their status as members of a stockholder group within the meaning of Section 13(d) of the Exchange Act and Rule 13d-5 promulgated thereunder, and preliminarily and permanently enjoining Defendants from any trading in Ashford Trust stock until they have done so;

(d)    Preliminarily and permanently enjoining Defendants from voting any shares owned at the time of their violations of Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-101 promulgated thereunder;

(e)    Declaring that (i) the Nomination Notice is invalid due to the Cygnus Defendants' failure to comply with the Advance Notice Requirements, and (ii) as a result, their slate of purported nominees is invalid and ineligible to stand for election by the stockholders as directors of Ashford Trust;

(f)      Declaring that Defendants cannot cure their violations of the Advance Notice Requirements;

(g)      Preliminarily and permanently enjoining Defendants from submitting or purporting to submit the Individual Defendants to Ashford Trust's stockholders for election to the Board at the 2021 Annual Meeting.

(h)      Preliminarily and permanently enjoining Defendants from soliciting proxy votes for the Individual Defendants or distributing any proxy materials regarding the Individual Defendants.

(i)      Declaring that all shares owned by Defendants in violation of the Ownership Limitations were automatically transferred to the charitable trust set forth in the Company's Charter, and that Swann was not a record holder of shares on December 31, 2020;

(j)      Ordering expedited consideration of this action;

(k)      Awarding Plaintiff Ashford Trust the costs and disbursements of this action, including reasonable attorneys' fees and other legal costs; and

(l)      Granting Plaintiff Ashford Trust such other and further relief as this Court may deem just and proper.

Dated:      January 19, 2021

                                        **THOMPSON & KNIGHT LLP**


                          By: */s/ Stephen C. Rasch*
                              Stephen C. Rasch
                              Texas State Bar No. 16551420
                              Michael W. Stockham
                              Texas State Bar No. 24038074
                              One Arts Plaza
                              1722 Routh Street Suite 1500
                              Dallas, TX 75201
                              Telephone: (212) 969-1700


*Of Counsel*:

**CADWALADER, WICKERSHAM & TAFT LLP**
Nicholas A. Gravante, Jr. (motion for admission forthcoming)
Karen C. Dyer (motion for admission forthcoming )
Adam K. Magid (motion for admission forthcoming )
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 406-6666
nicholas.gravante@cwt.com
karen.dyer@cwt.com
adam.magid@cwt.com