## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| ASHFORD HOSPITALITY TRUST, INC.,<br><br>                              Plaintiff,<br><br>              -against-<br><br>CYGNUS CAPITAL, INC., CYGNUS CAPITAL ADVISERS, LLC, CYGNUS GENERAL PARTNERS, LLC, CYGNUS CAPITAL REAL ESTATE ADVISORS II, LLC, CYGNUS OPPORTUNITY FUND, LLC, CYGNUS PROPERTY FUND IV, LLC, CYGNUS PROPERTY FUND V, LLC, CHRISTOPHER SWANN, RICHARD BURNS, SHANNON JOHNSON, WILLIAM MILLER, JR., RODERICK NEWTON II, THORNTREE CAPITAL PARTNERS LP, THORNTREE CAPITAL MASTER FUND LP, THORNTREE CAPITAL GP LLC, and REBECCA HARVEY,<br><br>                              Defendants. | No. 21-cv-00125-M<br><br>Oral Argument Requested |

## THORNTREE'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND .........................................................................................3

    A.    September – Early November 2020:  The Cygnus Defendants And Harvey
        Acquire Ashford Securities, And The Former Begins An Activist Campaign........4

    B.    November 9, 2020:  The First COVID-19 Vaccine Is Approved and ThornTree
        Invests In Ashford, A Hotel Operator Catering To Travelers ................................5

    C.    Late November 2020 to January 2021:  Ashford Dilutes Its Common
        Stockholders, the Cygnus Defendants Commence a Proxy Contest, And Ashford
        Files This Action.................................................................................................6

    D.    February 2021: ThornTree Sells Its Remaining Shares in Ashford and Is No
        Longer an Ashford Stockholder, and Ashford Files Its Amended Complaint.........7

ARGUMENT .............................................................................................................8

I.    ASHFORD'S SECTION 13(D) AND 14(A) CLAIMS FAIL AGAINST THORNTREE
    BECAUSE IT DOES NOT ADEQUATELY ALLEGE THAT THORNTREE WAS
    PART OF A "GROUP" .........................................................................................9

    A.    Ashford Fails To Plead That ThornTree Was Part Of A Section 13(D) Group ....10

        1.    An Agreement Is Required To Form A Section 13(d) Group, And A Mere
            Pre-Existing Relationship Is Not Enough .................................................12

            a.    Ashford Does Not Allege With Particularity That ThornTree And
                The Cygnus Defendants Coordinated Their Stock Purchases .......13

            b.    Ashford Does Not Allege That Defendants Entered A
                Voting Agreement.................................................................18

            c.    Ashford Does Not Allege That ThornTree Exerted "Significant
                Influence And Control Over Others," Or Vice Versa....................18

             d.    Ashford's Remaining Allegations Of A Relationship
                Are Legally Deficient .................................................................19

        2.    Ashford's Citations Evidence The Extraordinary Facts And Circumstances
            Necessary To Support A Group Claim........................................................23

    B.    The Failure Of Ashford's Section 13(d) Group Theory Dooms The Remainder Of
        Its Claims Against ThornTree................................................................................24

CONCLUSION.........................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Champion Parts Rebuilders, Inc. v. Cormier Corp.*,
   661 F. Supp. 825 (N.D. Ill. 1987) ..........................................................................23

*CLST Holdings, Inc. v. Red Oak Partners, LLC*,
   No. CIV. A. 3:09-CV-291P, 2009 WL 3320515 (N.D. Tex. Oct. 13, 2009)..........................10

*Forgent Networks, Inc. v. Sandberg*,
   No. A-09-CA-499, 2009 WL 2927015 (W.D. Tex. Aug. 27, 2009)......................................10

*Forward Indus. Inc. v. Wise*,
   No. 14-CV-5365 JSR, 2014 WL 6901137 (S.D.N.Y. Sept. 23, 2014) .................11, 12, 19, 20

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) ................................................................................15

*GAF Corp. v. Milstein*,
   453 F.2d 709 (2d Cir. 1971)..................................................................................21

*Gearhart Indus, Inc. v. Smith Int'l, Inc.*,
   741 F.2d 707 (5th Cir. 1984) ................................................................................10

*General Aircraft Corp. v. Lampert*,
   556 F.2d 90 (1st Cir. 1977)..............................................................................13, 23

*Greenberg v. Hudson Bay Master Fund Ltd.*,
   No. 14CV5226 DLC, 2015 WL 2212215 (S.D.N.Y. May 12, 2015)....................................23

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
   95 F. Supp. 2d 169 (S.D.N.Y. 2000)........................................................................22

*Hollywood Casino Corp. v. Simmons*,
   No. 3:02-CV-0325-M, 2002 WL 1610598 (N.D. Tex. July 18, 2002)........................... *passim*

*Int'l Banknote Co. v. Muller*,
   713 F. Supp. 612 (S.D.N.Y. 1989)..........................................................................23

*K-N Energy, Inc. v. Gulf Interstate Co.*,
   607 F. Supp. 756 (D. Colo. 1983)...........................................................................20

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
   223 F. Supp. 2d 435 (S.D.N.Y. 2001)...................................................................12, 20

*Lovelace v. Software Spectrum, Inc.*,
   78 F.3d 1015 (5th Cir.1996) .................................................................................15

*meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*,
  260 F. Supp. 2d 616 (S.D.N.Y. 2003)........................................................................22

*Morales v. Quintel Entm't, Inc.*,
  249 F.3d 115 (2d Cir. 2001)....................................................................................23

*Motient Corp. v. Dondero*,
  No. 3:05-CV-2070-P, 2006 WL 8437595 (N.D. Tex. Aug. 7, 2006),
  *aff'd in part, remanded in part*, 529 F.3d 532 (5th Cir. 2008) ...........................9, 11

*Piper v. Chris-Craft Indus., Inc.*,
  430 U.S. 1 (1977)....................................................................................................10

*Quigley Corp. v. Karkus*,
  No. 09-1725, 2009 WL 1383280 (E.D. Pa. May 15, 2009)...............................20, 22

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)....................................................................................23

*Schweitzer v. Inv. Comm. Of Phillips 66 Savings Plan*,
  960 F.3d 190 (5th Cir. 2020) ....................................................................................5

*SEC v. Savoy Indus., Inc.*,
  587 F.2d 1149 (D.C. Cir. 1978)..........................................................................18, 23

*SEC v. Zimmerman*,
  407 F. Supp. 623 (D.C.D.C. 1976),
  *aff'd in part, vacated in part*, 587 F.2d 1149 (D.C. Cir. 1978) ..............................19

*Std. Metals Corp. v. Tomlin*,
  503 F. Supp. 586 (S.D.N.Y. 1980)...........................................................................14

*Texasgulf, Inc. v. Canada Dev. Corp.*,
  366 F. Supp. 374 (S.D. Tex. 1973) ..........................................................................20

*Torchmark v. Bixby*,
  708 F. Supp. 1070 (W.D. Mo. 1988) ........................................................................20

*Tornado BUS Co. v. BUS & Coach Am. Corp.*,
  No. 3:14-CV-3231-M, 2015 WL 11120584 (N.D. Tex. Dec. 12, 2015) ....................9

*Transcon Lines v. A.G. Becker Inc.*,
  470 F. Supp. 356 (S.D.N.Y. 1979)...........................................................................20

*Univ. Container Corp. v. Horwitz*,
  No. 74 Civ. 3865, 1977 WL 1036 (S.D.N.Y. Sept. 6, 1977)....................................20

*In re Urcarco Sec. Litig.*,
 148 F.R.D. 561 (N.D. Tex. 1993),
 *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994)..............................................12

## **Statutes/Rules**

17 C.F.R. § 240.13d-1(c) .......................................................................................................5

17 C.F.R. § 240.13d-5(b)(1) ............................................................................................10, 12

15 U.S.C. § 78u-4(b)(1)(B).................................................................................................11

## <u>Other</u>

Steven Levy, REGULATION OF SECURITIES: SEC ANSWER BOOK (5th ed. 2020).........................20

## PRELIMINARY STATEMENT

On November 9, 2020, Pfizer announced that its vaccine candidate successfully targeted COVID-19, and that news spurred substantial trading across the U.S. public equities markets. Some 95 million shares traded that day in the common stock of Plaintiff Ashford Hospitality Trust, Inc. ("Ashford" or the "Company"), a publicly traded real estate investment trust (or "REIT") that owns and operates hotels (compared with volume of 190,000 shares the prior trading day).  Seeking to capitalize on this event, Defendants ThornTree Capital Partners LP, ThornTree Capital Master Fund LP, and ThornTree Capital GP LLC (together, "ThornTree"), acquired one million shares of Ashford's common stock for approximately $4 million.  On November 13, 2020, ThornTree timely filed a Schedule 13G with the U.S. Securities and Exchange Commission (the "SEC"), which properly disclosed that this was a passive investment and represented 6.84% of Ashford's outstanding common stock, well below Ashford's stated 9.8% ownership limitation for any individual stockholder.   In the weeks that followed, Ashford engaged in various dilutive transactions that diminished the proportionate investment of its stockholders, including ThornTree.

On January 19, 2021—more than two months after ThornTree's investment, and after diluting its common stockholders—Ashford filed this action, claiming for the first time that, as of its November 9, 2020 purchase, ThornTree was purportedly acting in a "wolf pack" with the other named Defendants who had allegedly "collectively acquir[ed] stock amounting to 21.3%" of Ashford's outstanding common stock to take over Ashford's board.  Ashford claims that this supposed "group" collectively exceeded 5% ownership and thus collectively had to make a public disclosure on a Schedule 13D, and that the purported failure to do so is an ongoing harm to the Company and its stockholders.  Ashford also claims this "group" violated the 9.8% ownership

limit in its charter.  Ashford's First Amended Complaint (the "Amended Complaint" or "Am. Compl.") fails to state a claim, and should be dismissed for several reasons.[1]

As an initial matter, while Ashford baldly asserts that ThornTree secretly formed a group to "opportunistically seize control of a publicly traded hotel owner" (Am. Compl. ¶ 2), Ashford makes a crucial acknowledgement that ThornTree began selling its shares in December 2020, well before this litigation began (*id.* ¶ 42 n.3).  Selling shares is the very opposite of what a party would do if it were seeking to take over a company, and is consistent with Ashford's own allegation that ThornTree is a passive investor.  *Id.* ¶ 7 ("ThornTree also has not been an activist shareholder"). Moreover, far from pleading with particularity that any "group" exists among the Cygnus Defendants and ThornTree, Ashford alleges that the Cygnus Defendants and ThornTree traded "at or about the same time," and that Defendant Christopher Swann and ThornTree's Chief Investment Officer (Mark Moore) have a long relationship.  Ashford's allegations fall far short.

Contrary to Ashford's allegation that ThornTree and the Cygnus Defendants invested "at or about the same time" (Am. Compl. ¶¶ 42, 52), publicly available disclosures referenced in the Amended Complaint reflect a very different story.  Indeed, public disclosures show that the Cygnus Defendants had been invested for months and executed more than 400  transactions in a variety of Ashford securities and were waging an activist campaign, on the one hand, while ThornTree made its challenged November 9, 2020 passive investment in Ashford's common stock in connection with the approval of the first vaccine announced to effectively combat COVID-19 (on a day when volume in Ashford's stock reached 95 million shares), and began selling its

---

[1] The AHT Excess Ownership Charitable Trust's (the "Charitable Trust") Motion to Intervene (Dkt. 50) remains pending.  ThornTree responds herein only to Ashford's Amended Complaint, and reserves all rights and defenses with regards to the Charitable Trust's proposed Complaint in Intervention (Dkt. 50-1).

position in December 2020 on a day when the Cygnus Defendants bought more shares (the very opposite of coordinated trading). Ashford's ignoring of these facts does not make it so.

Ashford's remaining allegations are that non-party Mark Moore (ThornTree's Chief Investment Officer) and Defendant Christopher Swann of Cygnus worked together in the 1990s and early 2000s, and that "[a]round September and October 2020," Swann sent Moore "some of Cygnus' public statements about Ashford." Am. Compl. ¶ 126. But as courts across the country have routinely reminded, a working relationship or friendship alone does not create a Section 13(d) group. Of course, were Ashford's preferred standard applied—*i.e.*, a pleading-stage presumption that if executives at two different investing firms share a history, a "group" is formed—it surely would mean the unwitting formation of a Section 13(d) "group" of investors in companies around the country. Ashford's proposal should be rejected.

Finally, beyond Ashford's deficient "group" allegations, ThornTree owns no stock in Ashford. Am. Compl. ¶ 124 ("ThornTree presently owns no stock"). Because ThornTree is not an Ashford stockholder, Ashford can in no way allege an "ongoing" harm supporting its parallel request for preliminary and permanent injunctive relief. Quite simply, Ashford's claims are entirely moot.

The Amended Complaint against ThornTree should be dismissed, with prejudice.

## FACTUAL BACKGROUND

Ashford is a publicly traded corporation and REIT that is incorporated in Maryland, based in Texas, and owns and operates hotels that cater to business travelers. Am. Compl. ¶¶ 3, 40. Its common stock trades on the New York Stock Exchange under the ticker "AHT." Ashford's charter contains a provision providing that no stockholder "may beneficially or constructively own more than 9.8% in value of the outstanding common or preferred stock of Ashford[.]" *Id.* ¶ 45.

In early 2020, as the COVID-19 pandemic took hold, Ashford's share price collapsed. Am. Compl. ¶ 40.  From March to October 2020, Ashford's common stock declined more than 91%. *Id.*  As Ashford puts it, the Company's stock price was "decimated by the COVID-19 pandemic." *Id.* ¶ 2; *see also id.* ¶ 40 ("The COVID-19 pandemic has been particularly hard on Ashford").

### A.    September – Early November 2020:  The Cygnus Defendants And Harvey Acquire Ashford Securities, And The Former Begins An Activist Campaign.

On September 17, 2020, the Cygnus Defendants commenced their activist campaign by publishing an open letter to Ashford's stockholders.  *See* Am. Compl. ¶ 88; Dkt. 9 at App. 169-177.  That letter explained that the Cygnus Defendants (i) had by then purchased "approximately 7.8% of the Company's outstanding common stock" and (ii) urged other stockholders to vote against Ashford's plans to amend the Company's charter and engage in a highly dilutive exchange offer of the Company's preferred stock into common stock.  Dkt. 9 at App. 169-177.  As of September 17, 2020, ThornTree is not alleged to have had any investment in Ashford.

On September 18, 2020, the Cygnus Defendants filed a Schedule 13D with the SEC disclosing their prior day's acquisition of 7.8% of the Company's common stock and their preceding acquisitions as well, dating back to July 2020.  Am. Compl. ¶ 108.  As of September 18, 2020, ThornTree is not alleged to have had any investment in Ashford.

From September 23 to October 27, 2020, the Cygnus Defendants issued public statements that continued to challenge Ashford's directors and management, and filed four amendments to their Schedule 13D.[2]  Ashford alleges that, "[a]round September and October 2020, [Swann] sent

---

[2] *See* Am. Compl. ¶¶ 89-90; Cygnus Defendants' Amendment No. 1 to Schedule 13D, filed Sept. 23, 2020, *available at* https://www.sec.gov/Archives/edgar/data/1232582/000119380520001159/sc13da112782002_09232020.htm; Cygnus Defendants' Amendment No. 2 to Schedule 13D, filed Sept. 28, 2020, *available at* https://www.sec.gov/Archives/edgar/data/1232582/000119380520001197 /e619960_sc13da-ashford.htm; Cygnus Defendants' Amendment No. 3 to Schedule 13D, filed Sept. 30, 2020, *available at* https://www.sec.gov/Archives/edgar/data/000092          189520002501/sc13da312782002_09302020.htm; Cygnus Defendants' Amendment No. 4 to Schedule 13D, filed Oct. 20, 2020, *available at* https://www.sec.gov/Archives/edgar/data/ 1232582/000092189520002657/sc13da412782002_10202020.htm.

Mark [Moore of ThornTree] some of Cygnus' public statements about Ashford. . . ."  Am. Compl. ¶ 126. During this period, ThornTree is not alleged to have had any investment in Ashford.[3]

**B.      November 9, 2020:  The First COVID-19 Vaccine Is Approved and ThornTree Invests In Ashford, A Hotel Operator Catering To Travelers.**

On November 9, 2020, Pfizer announced that its vaccine candidate "achieved success in the first interim analysis from phase 3 study."[4]  It was the first such successful COVID-19 vaccine.[5]

The U.S. securities markets soared on this news.  Later that day, ThornTree made its first investment in Ashford, a company in the business of operating hotels, many of which cater to business travelers (and whose common stock, as Ashford describes, had been "decimated" by COVID-19).  *See* Am. Compl. ¶¶ 2, 40, 51.  ThornTree correspondingly filed a Schedule 13G pursuant to SEC Rule 13d-1(c), governing passive investments in excess of 5% of a company's securities, and disclosed that it had acquired 6.84% of Ashford's common stock.[6]  Publicly available trading data reflects that many others did similarly that day:  while Ashford's common stock closed on Friday, November 6, 2020 at $1.44 per share with a trading volume of approximately 190,000 shares, on Monday, November 9, 2020 it closed at $4.73 per share, with a trading volume of approximately 95,000,000 shares.[7]

---

[3] The Amended Complaint suggests that the remaining Defendant, Rebecca Harvey, acquired her Ashford shares in October.  *See* Am. Compl. ¶ 57 (obliquely alleging she purchased "after October 1, 2020").

[4] Pfizer, Inc. Press Release, Nov. 9, 2020 *available at* https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-announce-vaccine-candidate-against.

[5] Katie Thomas, David Gelles and Carl Zimmer, *Pfizer's Early Data Shows Vaccine Is More Than 90% Effective*, N.Y. Times (Nov. 9, 2020), https://www.nytimes.com/2020/11/09/health/covid-vaccine-pfizer.html?searchResultPosition=1.

[6] One acquiring more than five percent of a company's securities can elect to file a Schedule 13G (rather than the more onerous Schedule 13D) pursuant to Rule 13d-1(c), as ThornTree did, if they have "not acquired such securities with any purpose, or with the effect, of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having that purpose or effect[.]"  *See* 17 C.F.R. § 240.13d-1(c).

[7] *See* Yahoo Finance, Ashford Hospitality Trust, Inc., *available at* https://finance.yahoo.com/quote/AHT/history?period1=1604620800&period2=1604966400&interval=1d&filter=history&frequency=1d&includeAdjustedClose=true (last visited Feb. 2, 2021); *see also Schweitzer v. Inv. Comm. Of Phillips 66 Savings Plan*, 960 F.3d 190, 193 n.3 (5th Cir. 2020) ("We can, of course, take judicial notice of stock prices" (quotation marks and citation omitted)).

**THORNTREE'S MEMORANDUM OF LAW**
<u>**IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT**</u>                    **Page 5**

**C.    Late November 2020 to January 2021:  Ashford Dilutes Its Common Stockholders, the Cygnus Defendants Commence a Proxy Contest, And Ashford Files This Action.**

On November 25, 2020, Ashford announced the completion of its previously announced exchange offering,[8] which significantly diluted previously existing common stockholders' investments (like that of ThornTree).[9]

On December 8, 2020, Ashford's board of directors granted the Cygnus Defendants a waiver of the 9.8% limit in the Company's charter, permitting them to acquire up to 15% of its outstanding common stock.  Am. Compl. ¶ 66.  This waiver was not publicly filed, and there is no allegation that ThornTree was aware of it until its review of the original Complaint in this action.

On December 22, 2020, ThornTree sold a portion of its Ashford common stock; at this time, Ashford had not indicated that it had any concern regarding ThornTree's investment.  Am. Compl. ¶ 124; Dkt. 77.  This transaction is likewise unsurprising given its context: it came one day after Ashford's December 21 disclosure that it was "in a process regarding a potential financing," and if "unable to raise additional capital," it "may need to seek bankruptcy court protection."[10]

On December 26, 2020, Ashford announced that it had obtained additional strategic financing.  In so announcing, Ashford made clear its own belief a successful COVID-19 vaccine could benefit its common stock; in a press release filed with the SEC, Ashford's President and Chief Executive Officer explained that Ashford was "encouraged by the news regarding vaccines

---

[8]  Ashford Hospitality Trust, Inc., Current Report (Form 8-K) (Nov. 25, 2020), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001232582/46ba2311-ea53-4197-905b-8b349a3f1705.pdf.
[9] *Id.*  For a sense of the magnitude of this dilutive effect:  as of November 5, 2020, Ashford had 14.6 million outstanding shares of common stock.  After these dilutive events, it had approximately 53 million outstanding shares.
[10]Ashford Hospitality Trust, Inc., Current Report (Form 8-K) (Dec. 21, 2020), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1232582/000110465920137646/tm2037875d6_8k.htm

and believe this strategic financing commitment provides substantial capital and ample liquidity for Ashford Trust to capitalize on the upcoming recovery in the hospitality industry."[11]

On December 31, 2020, Defendant Swann (the Cygnus Defendants' principal) informed Ashford that the Cygnus entities would seek to nominate individuals to Ashford's board of directors.  Am. Compl. ¶ 5.  Ashford does not allege that ThornTree had any participation in preparing or submitting those director nominations.

On January 5, 2021, the Cygnus Defendants issued a press release disclosing their notice of nomination of directors to the Ashford board.  Am. Compl. ¶ 73.  That January 5 statement does not mention ThornTree.  *Id.*  Ashford does not allege that ThornTree had any involvement in the preparation or publication of that statement.

On January 19, 2021, Ashford's board of directors "notified Cygnus" that it rejected Cygnus' nomination of individuals to the Ashford board of directors.  Am. Compl. ¶ 115.

On that same day, Ashford also filed this action.  The original Complaint is the first writing in which Ashford contended that ThornTree's investment—dating November 9, 2020, more than two months earlier—somehow violated any law or the Company's charter.

### D.   February 2021: ThornTree Sells Its Remaining Shares in Ashford and Is No Longer an Ashford Stockholder, and Ashford Files Its Amended Complaint.

On February 5, 2021, ThornTree sold the remainder of its shares in Ashford and no longer has any investment in Ashford securities.  Dkt. 77 ¶ 2; Am Compl ¶ 124.  At the Court's request, ThornTree supplied a supplemental declaration confirming that "[a]s of Friday February 5, 2021, ThornTree sold its remaining shares in Ashford Hospitality Trust, Inc. ("Ashford"), and ThornTree presently owns no stock or other securities issued by Ashford. ThornTree's prior sales of Ashford

---

[11]   Ashford Hospitality Trust, Inc., Current Report (Form 8-K) (Dec. 28, 2020), *available at* https://www.sec.gov/Archives/edgar/data/1232582/000110465920139350/tm2039226d2_ex99-1.htm.

stock occurred on December 22, 2020, January 29, 2021 and each of February 1-4, 2021.  All of ThornTree's sales of Ashford securities were into the open market.  Thus, to the best of my knowledge, none of those sales were directly or indirectly to any other named defendant in this action."  *Id.*  On February 14, 2021, Ashford filed its First Amended Complaint.

## ARGUMENT

As against ThornTree, the Amended Complaint rises and falls with Ashford's unfounded claim that ThornTree was part of a "wolf pack" or "group" with the other Defendants.  The Amended Complaint asserts eight counts.  Count I alleges that the formation of a supposed "group" rendered ThornTree's November 13, 2020 Schedule 13G filing inadequate and violative of Section 13(d) of the Exchange Act (because instead a Schedule 13D filing would have been necessary). Am. Compl. ¶¶ 130-141.  Counts II and III allege that the Cygnus Defendants' January 5, 2021 letter to Ashford stockholders and press release violated Sections 13(d) and 14(a) of the Exchange Act, respectively, by not referencing ThornTree or Harvey as purported "wolf pack" members.  *Id.* ¶¶ 142-156.  Count IV alleges that, due to ThornTree's purported participation in a Section 13(d) "group," Thorntree also purportedly violated Ashford's bylaws for failing to provide information required in connection with the Cygnus Defendants' director nominations.  *Id.* ¶¶ 157-168. Counts V and VI challenge the propriety of the Cygnus Defendants' director nominations; these are not pled against ThornTree at all, and to the extent Ashford suggests otherwise as to ThornTree, they rise and fall with the allegation that ThornTree was purportedly part of the nominating "group."  *Id.* ¶¶ 169-187.  Finally, Counts VII and VIII allege that ThornTree's supposed

participation in a Section 13(d) "group" also violated the 9.8% ownership threshold in Ashford's corporate charter and seek a declaration of the same. *Id.* ¶¶ 188-208.[12]

"For a pleading to withstand a Rule 12(b)(6) motion, it must . . . 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tornado BUS Co. v. BUS & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 11120584, at *2 (N.D. Tex. Dec. 12, 2015) (Lynn, J.) (citations omitted). It must also "provide 'more than an unadorned accusation devoid of factual support.'" *Id.* And where, as here, a plaintiff alleges violations of Sections 13(d) and 14(a) of the Exchange Act, the heightened pleading standards under the Private Securities Litigation Reform Act ("PSLRA") also apply. *See Motient Corp. v. Dondero*, No. 3:05-CV-2070-P, 2006 WL 8437595, at *8 (N.D. Tex. Aug. 7, 2006), *aff'd in part, remanded in part*, 529 F.3d 532 (5th Cir. 2008) ("§ 78u-4(b)(1)'s heightened pleading standard applies to Plaintiff's 13(d) claims").[13]

The Amended Complaint falls far short of pleading that ThornTree participated in any Section 13(d) "group," and should be dismissed as against ThornTree, with prejudice.

## I.   ASHFORD'S SECTION 13(D) AND 14(A) CLAIMS FAIL AGAINST THORNTREE BECAUSE IT DOES NOT ADEQUATELY ALLEGE THAT THORNTREE WAS PART OF A "GROUP"

Ashford does not allege that ThornTree itself ever acquired more than 9.8% of Ashford's common stock. Nor does Ashford allege that ThornTree's Schedule 13G filing is deficient for any reason other than the bald claim that ThornTree was acting in a Section 13(d) "group" with the remaining Defendants and thus should have filed a Schedule 13D. Because Ashford's allegations

---

[12] Counts II, III, IV, VII and VIII are derivative of Count I. Absent sufficient pleading of a Section 13(d) group, Plaintiff's remaining claims against ThornTree cannot survive.

[13] To the extent Ashford claims Defendants "acted with fraudulent intent, Federal Rule of Civil Procedure 9(b) [also] applies." *Hollywood Casino Corp. v. Simmons*, No. 3:02-CV-0325-M, 2002 WL 1610598, at *1 (N.D. Tex. July 18, 2002) (Lynn, J.). The "Fifth Circuit requires [such] pleadings to allege the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained hereby." *Id.*

**THORNTREE'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT**                                   **Page 9**

fall far short of alleging that ThornTree acted as part of a "group" for purposes of the federal securities laws (and, in turn, Ashford's charter, which incorporates that same standard, Am. Compl. ¶ 46), the Amended Complaint should be dismissed as against ThornTree.

### A.    Ashford Fails To Plead That ThornTree Was Part Of A Section 13(D) Group

"The purpose of the Williams Act, of which Section[] 13(d) . .  [is] a part, is not to tip the scales in favor of management or its opponents but to insure that a public shareholder . . . can obtain adequate information[.]"  *Gearhart Indus, Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 713 (5th Cir. 1984).[14]  Section 13 consequently requires[15] that certain investors make disclosure regarding their investments and intentions, depending on the circumstances.  *See Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 31 (1977) ("[The Williams Act] is designed solely to require full and fair disclosure for the benefit of investors.").

One such circumstance is to require that a "group" disclose its holdings collectively—and thus such a finding carries statutory and practical significance.  SEC rules provide that this obligation attaches to those that have reached *agreement* to take action together regarding a company's securities.  *See* 17 C.F.R. § 240.13d-5(b)(1) (providing that a group designation

---

[14] This purpose is fully satisfied here, where Ashford has made its claims that ThornTree's filing was purportedly deficient very public, not just via litigation filings, but in press releases that Ashford filed with the U.S. Securities and Exchange Commission and distributed to stockholders. *See* Dkt. 9 at App. 32 ("Ashford Hospitality Trust Files Lawsuit Against Cygnus Capital To Prevent Unlawful Proxy Contest and Continuing Violations of Federal Securities Laws," Jan. 19, 2021); *see also Forgent Networks, Inc. v. Sandberg*, No. A-09-CA-499, 2009 WL 2927015, at *2 (W.D. Tex. Aug. 27, 2009) (concluding that "shareholders have sufficient information as to the dispute between Forgent's management and Defendants to draw their own conclusions as to the existence of a Section 13(d) group and what would likely result should they vote to replace Forgent's current board of directors" because the parties' dispute and litigation had been "fully and repeatedly disseminated to the investing public through numerous public filings . . . and through numerous press releases").

[15] Further, because "investor protection" is "the sole purpose of the Williams Act," "an injunction will issue only on a showing of irreparable harm to the interests which the Act seeks to protect." *CLST Holdings, Inc. v. Red Oak Partners, LLC*, No. CIV. A. 3:09-CV-291P, 2009 WL 3320515, at *2 (N.D. Tex. Oct. 13, 2009) (rejecting injunction predicated upon claim that "shareholders were deprived of information that would assist them in determining the true value of their stock, and whether or not they wished to remain a stockholder in the midst of a battle for corporate control") (citing *Gearhart Indus, Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 715 (5th Cir. 1984)).

requires that "two or more persons *agree to act together* for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer.").

At the motion to dismiss stage, "[w]hether a group exists under Section 13(d)(3) turns on 'whether there is sufficient direct or circumstantial evidence to support the inference of a formal or informal understanding between [the defendants] for the purpose of acquiring, holding, or disposing of securities.'" *Forward Indus. Inc. v. Wise*, No. 14-CV-5365 JSR, 2014 WL 6901137, at *2 (S.D.N.Y. Sept. 23, 2014) (quoting in part *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 617 (2d Cir. 2002)). "[T]he complaint must contain 'enough factual matter (taken as true) to suggest that an agreement was made.'" *Id.* (quoting in part *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 346 (S.D.N.Y. 2011), *aff'd* 466 F. App'x 39 (2d Cir. 2012)). This means "there must be evidence that some agreement exists, lest Section 13(d) be used merely as an eleventh-hour bludgeon for management embroiled in proxy contests." *Id.*

Further, the PSLRA's heightened pleading standards apply to claims brought pursuant to Sections 13(d) and 14(a) of the Exchange Act. *See*, *e.g.*, *Motient Corp.*, 2006 WL 8437595, at *8 ("[T]he Court concludes that the heightened pleading standard set forth in § 78u-4(b)(1) [of the PSLRA] applies to this action brought under section 13(d)"); *Hollywood*, 2002 WL 1610598, at *2 ("Claims I-VI [including Section 13(d) and 14(a) claims] are subject to the heightened pleading requirements of the [PSLRA]."). In this regard, the PSLRA requires particularity; a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement was misleading, and, if an allegation regarding the statement or omission is made on information and belief,[16] the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). For this reason, generalized allegations related to the conduct of

---

[16] Ashford's Amended Complaint is pled "on knowledge as to itself and upon information and belief as to all other matters." Am. Compl. at 2.

"Defendants" do not satisfy Ashford's pleading burden as to ThornTree.[17]   Application of these standards makes clear that Ashford has failed to state a claim against ThornTree.

> ### 1.   An Agreement Is Required To Form A Section 13(d) Group, And A Mere Pre-Existing Relationship Is Not Enough.

Ashford acknowledges that the "key inquiry" as to its claim that ThornTree was part of a "group" or "wolf pack" is whether there was an *agreement* among the alleged group to "act together for the purpose of acquiring, holding, voting, or disposing" of Ashford's common stock. Am. Compl. ¶ 62 ("there must be an agreement to act for a common purpose before a 'group' can be said to have formed"); *see also* 17 C.F.R. § 240.13d-5(b)(1) (requiring that "two or more persons *agree to act together* . . ." (emphasis added)); *Forward Indus. Inc.*, 2014 WL 6901137, at *2 (inquiry "turns on whether there is sufficient direct or circumstantial evidence to support the inference of a formal or informal understanding between [the defendants] for the purpose of acquiring, holding, or disposing of securities" (quotation marks and citation omitted; brackets in original)).   "The unadorned allegation that defendants are acting as a group is not adequate to sustain a Section 13(d) claim."   *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 449 (S.D.N.Y. 2001) (granting motion to dismiss).

Ashford does not directly allege (because it cannot) that there was any such agreement. Instead, Ashford points to factors that "are indicia of group formation" to urge the Court to deduce that such an agreement existed:

> (i)   coordinated stock purchases combined with 'plus factors,' such as a shareholder making its purchase of stock on the basis of a loan from another group member, group members acting through one member 'as their

---

[17] *See Hollywood Casino Corp. v. Simmons*, 3:02-cv-0325, 2002 WL 1610598, at *5 (N.D. Tex. July 18, 2002) (Lynn, J.) (granting motion to dismiss in part; "[i]n a Complaint alleging fraud, the simple grouping of Valhi in with Simmons and Contran in allegations, without expressly setting forth what fraudulent activities Valhi itself allegedly engaged in, fails to meet the heightened pleading standards of Rule 9(b) and the PSLRA"); *see also In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) ("[G]eneral allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b).").

common agent,' and the group acquiring its shares simultaneously in identical transactions;

(ii)     voting agreements; and

(iii)    exertion of significant influence and control over other group members.

Am. Compl. ¶ 63. Ashford fails to allege with particularity that any of these "indicia" apply to ThornTree.

> a.     *Ashford Does Not Allege With Particularity That ThornTree And The Cygnus Defendants Coordinated Their Stock Purchases.*

Ashford suggests that coordinated trading can indicate formation of a Section 13(d) group, yet fails to make any particularized allegations of just that: *coordination*.  The Complaint explains that, in this regard, courts look for indicators of "coordinated stock purchases *combined with 'plus factors'*":  (i) "a shareholder making its purchase of stock on the basis of a loan from another group member"; (ii) "group members acting through one member 'as their common agent'";  (iii) "or the group acquiring its shares simultaneously in identical transactions."  Am. Compl. ¶ 63.  Of course, Ashford does not allege that ThornTree either acted "on the basis of a loan from another group member" or through a "common agent."  *Id.*  That leaves an effort to show coordinated trading "simultaneously in identical transactions."  *Id.*  As Ashford's Complaint and authorities indicate, successful claims along these lines hew to the literal meaning of the phrase.  In *General Aircraft v. Lampert*, the First Circuit affirmed a finding that three individuals acted as a group where:

> the 150,485 shares of GAC common stock **were acquired simultaneously in identical transactions (except for amount) by all three appellants**; Scuderi's shares were held in Lampert's name from the time of purchase; a single Schedule 13D was filed on behalf of all three appellants and signed by all three; copies of correspondence with GAC from any one appellant were sent to the others. . . .

556 F.2d 90, 95 (1st Cir. 1977) (emphasis added); Am. Compl. ¶ 63 n.9 (citing *General Aircraft Corp. v. Lampert*, 556 F.2d 90 (1st Cir. 1977)); *see also Hollywood*, 2002 WL 1610598, at *2 (discussed *infra* pp. 21-22; corporate raider began acquiring stock as soon as friend and former-

CEO was fired in effort to reinstall the then former-CEO to his prior position).   Conversely, inconsistent trading patterns belie any finding of coordination or agreement.  *See Std. Metals Corp. v. Tomlin*, 503 F. Supp. 586, 603 (S.D.N.Y. 1980) ("the different, and at times inconsistent, trading patterns of the various defendants cast serious doubt upon any contention of a concerted effort").

To try and fashion a pleading to suggest group activity, Ashford alleges in conclusory fashion that the "ThornTree Defendants' and Cygnus Defendants' stock purchases occurred at or about the same time.  They also filed Schedules 13D and 13G disclosing their respective purchases on the same date, November 9, 2020."  Am. Compl. ¶ 52; *accord id.* ¶ 7.  Ashford's allegations in this regard lack particularity and are affirmatively misleading.

ThornTree made its investment in Ashford on November 9, 2020, Am. Compl. ¶ 42, shortly after the same-day announcement that Pfizer developed the first vaccine to combat COVID-19, acquiring one million shares, or 6.84%, of Ashford's common stock.   It timely filed its Schedule 13G on November 13.  *Id.* ¶ 139.  The Complaint evidences a logical rationale for this investment decision:  Ashford is in the business of owning and operating hotels catering to business travelers; it self-describes its common stock as having been "decimated" by COVID-19; and thus the announcement of the first vaccine that could combat COVID-19 presented an investment opportunity.  *Id.* ¶ 2.  Many others presumably invested in Ashford this same day for this same reason.  *See supra* p. 5 (discussing prior trading day price of $1.44 and volume of 190,000 shares and November 9, 2020 price of $4.73 and trading volume of 95,000,000 shares).

In contrast, public records referenced in the Complaint reflect that the Cygnus Defendants began investing in Ashford's securities *at least by July 2020*, and executed hundreds of transactions in Ashford's common stock as well as its various series of preferred stock and call options (unlike ThornTree).  On September 18, 2020, the Cygnus Defendants filed their Schedule

13D. Am. Compl. ¶ 108. They then amended that filing *ten times*. *Id.* Thus, while technically true that one of those ten amendments was filed within "one day" of ThornTree's November 13, 2020 Schedule 13G filing, Ashford's suggestion that this means anything is misplaced. *Id.* ¶ 7. In stark contrast to Ashford's allegations that ThornTree purchased one million shares of Ashford common stock on November 9, 2020, and sold on December 22, 2020, January 29, 2021, and February 1-5, 2021—closing out ThornTree's position—the Cygnus Defendants' Schedule 13D, as amended, evidences the following trading history, summarized here and organized by date[18]:

| Date of Transaction | Reporting Person(s)[19] | Nature of Transaction(s) | Number of Transactions |
|---|---|---|---|
| 7/17/2020 | Cygnus | Sell 5,000 common | 1 |
| 7/28/2020 | Cygnus | Buy 1,300 common | 1 |

---

[18] Exhibit A to this brief reflects the complete list of the more than 400 transactions evidenced in this summary chart. "When reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citation omitted); *see also Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996) ("When deciding a motion to dismiss . . . a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC and (2) are actually filed with the SEC.").

Ashford references the Cygnus Defendants' Schedule 13D filing and the amendments thereto in its Amended Complaint and bases its claims partly upon those filings; those filings are therefore properly incorporated by reference and considered on this motion and are the source of all data in this summary chart. *See, e.g.*, Am. Compl. ¶ 108 ("On September 18, 2020, the Cygnus Defendants filed a Schedule 13D with the SEC. . . . Since then, the Cygnus Defendants have filed ten amendments to their Schedule 13D with the SEC."); *see also* Cygnus Defendants' Schedule 13D, filed Sept. 18, 2020, *available at* https://www.sec.gov /Archives/edgar/data/1232582/000119380520000151 /sc13d1278200209182020. htm; Cygnus Defendants' Amendment No. 1 to Schedule 13D, filed Sept. 23, 2020, *available at* https://www. sec.gov/Archives/edgar/data/1232582/000119380520001159/sc13da112782002_ 09232020.htm; Cygnus Defendants' Amendment No. 2 to Schedule 13D, filed Sept. 28, 2020, *available at* https://www.sec.gov/ Archives/edgar/data/1232582/000119380520001197/e619960_sc13da-ashford.htm; Cygnus Defendants' Amendment No. 3 to Schedule 13D, filed Sept. 30, 2020, *available at* https://www.sec.gov/Archives/ edgar/data/1232582/000092189520002501/sc13da312782002_09302020.htm; Cygnus Defendants' Amendment No. 4 to Schedule 13D, filed Oct. 20, 2020, *available at* https://www.sec.gov/ Archives/edgar/data/1232582/000092189520002657/sc13da412782002_10202020.htm; Cygnus Defendants' Amendment No. 5 to Schedule 13D, filed Nov. 12, 2020, *available at* https://www.sec.gov/Archives/edgar/ data/1232582/000092189520002899 /sc13da512782002_11102020.htm; Cygnus Defendants' Amendment No. 6 to Schedule 13D, filed Dec. 1, 2020, *available at* https://www.sec.gov/ Archives/edgar/data/1232582 /000092189520003150/sc13da612782002_11302020.htm; Cygnus Defendants' Amendment No. 7 to Schedule 13D, filed Dec. 10, 2020, *available at* https://www. sec.gov/ Archives/edgar/data/1232582/000092189520003202 /sc13da712782002_12102020.htm; Cygnus Defendants' Amendment No. 8 to Schedule 13D, filed Dec. 29, 2020, *available at* https://www.sec.gov/Archives/edgar/data/1232582/000092189520003286/sc13da812782002_ 12292020.htm; Cygnus Defendants' Amendment No. 9 to Schedule 13D, filed Jan. 5, 2021, *available at* https://www.sec.gov/Archives/edgar/data/1232582/000119380521000012 /sc13da91 278200201 052021.htm

[19] "Cygnus" refers to Cygnus Opportunity Fund, LLC, Cygnus Property Fund IV, LLC, and/or Cygnus Property Fund V, LLC.

| Date of Transaction | Reporting Person(s)[19] | Nature of Transaction(s) | Number of Transactions |
|---|---|---|---|
| 8/3/2020 | Swann | Buy 3,500 common | 1 |
| 8/4/2020 | Cygnus, Swann | Buy 24,000 common | 8 |
| 8/5/2020 | Cygnus | Buy 30,000 common | 4 |
| 8/6/2020 | Cygnus | Buy 2,900 common | 1 |
| 8/10/2020 | Cygnus, Swann | Buy 17,000 common | 4 |
| 8/11/2020 | Cygnus, Swann | Buy 35,800 common | 5 |
| 8/13/2020 | Cygnus | Buy 10,000 common | 1 |
| 8/14/2020 | Cygnus | Buy 5,000 common | 1 |
| 8/17/2020 | Cygnus, Swann | Buy 152,000 common | 32 |
| 8/18/2020 | Cygnus, Swann | Buy 59,975 common | 17 |
| 8/19/2020 | Cygnus, Swann | Buy 132,500 common | 19 |
| 8/20/2020 | Cygnus, Swann | Buy 140,500 common | 11 |
| 8/21/2020 | Cygnus, Swann | Buy 48,000 common | 14 |
| 8/24/2020 | Cygnus, Swann | Buy 128,781 common | 37 |
| 8/25/2020 | Cygnus, Swann | Buy 38,250 common | 12 |
| 8/26/2020 | Cygnus, Swann | Buy 6,675 common | 6 |
| 8/27/2020 | Cygnus, Swann | Buy 9,500 common | 3 |
| 8/28/2020 | Cygnus, Swann | Buy 13,000 common | 3 |
| 8/31/2020 | Swann | Buy 4,500 common | 3 |
| 9/1/2020 | Swann | Buy 6,000 common | 3 |
| 9/4/2020 | Swann | Buy 400 options | 5 |
| 9/9/2020 | Cygnus, Swann | Buy 14,250 common, 200 options | 10 |
| 9/10/2020 | Swann | Buy 10,000 common, 100 options | 6 |
| 9/11/2020 | Swann | Buy 35,000 common | 7 |
| 9/14/2020 | Swann | Buy 2,000 common | 1 |
| 9/15/2020 | Cygnus | Buy 300 common | 1 |
| 9/16/2020 | Cygnus | Buy 3,000 common | 1 |
| 9/28/2020 | Cygnus, Swann | Buy 23,000 common | 5 |
| 9/29/2020 | Cygnus, Swann | Buy 53,074 common | 10 |
| 9/30/2020 | Cygnus | Buy 6,000 common | 2 |
| 10/1/2020 | Cygnus | Buy 30,000 common | 3 |
| 10/2/2020 | Cygnus, Swann | Buy 19,225 common, 6,200 preferred | 9 |
| 10/5/2020 | Cygnus | Buy 2,000 common, 2,200 preferred | 3 |
| 10/6/2020 | Cygnus | Buy 6,500 common, 2,900 preferred | 7 |
| 10/7/2020 | Cygnus | Buy 8,600 common | 3 |
| 10/9/2020 | Swann | Buy 24,000 common | 8 |
| 10/12/2020 | Cygnus | Buy 1,000 preferred | 1 |
| 10/14/2020 | Cygnus | Buy 10,000 common, 1,900 preferred | 2 |
| 10/15/2020 | Cygnus | Buy 10,000 common, 2,100 preferred | 2 |
| 10/16/2020 | Cygnus | Buy 10,000 common | 1 |
| 10/20/2020 | Cygnus | Buy 5,000 common, 1,900 preferred | 2 |
| 10/23/2020 | Cygnus | Buy 600 preferred | 1 |
| 10/26/2020 | Cygnus | Buy 10,000 common | 1 |

| Date of Transaction | Reporting Person(s)[19] | Nature of Transaction(s) | Number of Transactions |
|---|---|---|---|
| 10/27/2020 | Cygnus | Buy 10,100 common | 2 |
| 10/28/2020 | Cygnus | Buy 36,000 common | 13 |
| 10/30/2020 | Cygnus, Swann | Buy 105,000 common, 6,000 preferred | 17 |
| 11/2/2020 | Cygnus, Swann | Buy 15,800 common, 300 preferred | 5 |
| 11/3/2020 | Cygnus, Swann | Buy 2,650 common, 1,200 preferred | 8 |
| 11/4/2020 | Cygnus | Buy 10,000 common | 1 |
| 11/6/2020 | Cygnus | Buy 14,163 preferred | 5 |
| 11/9/2020 | Cygnus, Swann | Buy 143,018 common, 23,776 preferred; sell 5,000 options | 17 |
| 11/10/2020 | Cygnus | Buy 5,000 preferred | 2 |
| 11/11/2020 | Cygnus | Sell 11,700 common | 1 |
| 11/16/2020 | Cygnus | Buy 94,000 preferred | 7 |
| 11/17/2020 | Swann | Buy 2,000 preferred | 1 |
| 11/18/2020 | Cygnus | Buy 16,344 preferred | 3 |
| 11/23/2020 | Cygnus | Buy 5,000 preferred | 1 |
| 11/30/2020 | Cygnus | Buy 1,000 preferred | 1 |
| 12/3/2020 | Cygnus | Buy 2,200 preferred | 1 |
| 12/4/2020 | Cygnus | Buy 2,100 preferred | 1 |
| 12/7/2020 | Cygnus | Buy 1,100 preferred | 1 |
| 12/8/2020 | Cygnus | Buy 3,000 preferred | 2 |
| 12/11/2020 | Cygnus | Buy 1,000 preferred | 1 |
| 12/14/2020 | Cygnus | Buy 700 preferred | 2 |
| 12/15/2020 | Cygnus, Swann | Buy 6,392 preferred | 9 |
| 12/16/2020 | Cygnus | Buy 6,300 preferred | 4 |
| 12/18/2020 | Swann | Buy 2,500 preferred | 5 |
| 12/21/2020 | Cygnus | Buy 2,200 preferred | 3 |
| 12/22/2020 | Cygnus, Swann | Buy 14,000 preferred | 9 |
| 12/23/2020 | Cygnus, Swann | Buy 12,000 preferred | 6 |

The Cygnus Defendants' pattern of purchases summarized above is in no way correlated to, let alone "identical" to ThornTree's contested November 9, 2020 investment, which was made alongside many other investors who believed that Ashford's common stock could be favorably impacted by development of a COVID-19 vaccine. The above is also entirely inconsistent with ThornTree's sales of Ashford common stock, beginning on December 22, 2020 (a day in which Cygnus and Swann purchased 14,000 preferred shares), and following on January 29, and February 1-5. *See* Am. Compl. ¶ 124; Dkt. 77. Ashford's patently misleading and not remotely particularized claim that the Cygnus Defendants' investments and ThornTree's November 9, 2020

investment occurred "at or about the same time" (*see* Am. Compl. ¶¶ 42, 52) should be given no weight whatsoever.[20]

           b.     *Ashford Does Not Allege That Defendants Entered A Voting Agreement.*

Although Ashford suggests that voting agreements are a potential means of showing that a Section 13(d) group exists, Am. Compl. ¶ 63, it makes no such allegations as to ThornTree.

           c.     *Ashford Does Not Allege That ThornTree Exerted "Significant Influence And Control Over Others," Or Vice Versa.*

Ashford states that "significant influence and control over others" is a potential indicator of a Section 13(d) group, Am. Compl. ¶ 63, but again, it makes no allegations as to ThornTree in this regard (let alone any particularized allegations).  The case that it cites for this theoretical proposition is inapposite.  *See id.* n.11; *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149 (D.C. Cir. 1978).

In *Savoy*, the Court of Appeals for the District of Columbia affirmed a finding that an individual [Zimmerman] was a member of a Section 13(d) group because he "controlled another member of the group [Interstate]."  587 F.2d at 1162.  The pertinent facts included:: (i) Interstate's offices were located "in a back room in Zimmerman's suite of offices"; (ii) Interstate "used Zimmerman's telephones, office facilities, including copying machine and secretarial services"; (iii) "Interstate's accounting reports and tax returns were prepared by an accountant who was an employee of Zimmerman and who was suggested by Zimmerman" although "Interstate never paid for the services of this accountant"; (iv) "Zimmerman provided Interstate with a cash advance"

---

[20] On February 16, 2021, ThornTree timely filed with the SEC an update to its Schedule 13G, pursuant to SEC Rule 13d-2, which requires that within 45 days of the year-end, passive filers provide an annual update regarding their holdings (here, as of December 31, 2020).  ThornTree Schedule 13G/A (Feb. 16, 2021), *available at* https://www.sec.gov/Archives/edgar/data/1232582/000117266121000466/thorntree-aht23120a1.htm.  ThornTree's filing thus provided an update between its November 13, 2020 Schedule 13G and December 31, 2020.  Other Ashford investors have recently filed such updates as well.  *E.g.*, Dkt. 86 Exs. A & B, Fort Congress Associates Form 13G filing and SEC Monitor page (reported a 9% passive ownership stake as of November 16, 2020, a week after ThornTree made its initial passive investment, and then updated that its stake is at 2.5%); Dkt. 86 Ex. B (SEC Monitor page listing recent Section 13 filings).

that was never memorialized; and (v) Zimmerman "provided ideas" for Interstate's operations and the company "sought Zimmerman's help when the company had problems." *SEC v. Zimmerman,* 407 F. Supp. 623, 626-27 (D.C.D.C. 1976) *aff'd in part, vacated in part*, 587 F.2d 1149 (D.C. Cir. 1978). As the trial court understandably concluded, "Zimmerman was in control of Interstate." *Id.*[21]

No such facts regarding "influence" or "control" are pled here as to ThornTree, a registered advisory firm with independent offices and operations entirely distinct and separate from those of the Cygnus Defendants (themselves sophisticated investors presently waging a proxy contest).

> d. *Ashford's Remaining Allegations Of A Relationship Are Legally Deficient.*

Ashford's remaining allegations against ThornTree relate to the relationship between non-party Moore (ThornTree's Chief Investment Officer) and Defendant Swann (principal at the Cygnus entities). Ashford's allegations in this regard are as follows:

> Moore worked with Swann in the 1990s when Moore was a consultant at McKinsey & Company's Atlanta office. Towards the end of that decade, Swann and Moore worked closely together to co-found Global Food Exchange, an Atlanta-based company. Moore and Swann started Global Food Exchange out of Swann's Atlanta apartment in February 1999.

Am. Compl. ¶ 53. This plainly does not carry the day.

Although Ashford describes the Section 13(d) inquiry in its Complaint with reference to case law, it does not mention the import of a pre-existing friendship or business relationship, let alone claim them to be dispositive. Am. Compl. ¶¶ 58-63. With good reason. Courts across the

---

[21] *But see Forward Indus.*, 2014 WL 6901137, at *3 (granting motion to dismiss where plaintiff argued that employer and employee were part of a Section 13(d) group because the former could exert pressure on the latter because although the employee "may feel some pressure . . . that subjective perception would not, by itself, constitute an understanding or agreement").

country have repeatedly reaffirmed that a personal relationship—including one grounded in prior business dealings—does not suffice to create a control group.[22]

The *Forward Industries v. Wise* case is instructive in this regard, where claims far stronger than Ashford's were dismissed with prejudice on the pleadings. 2014 WL 6901137, at *3. There, the plaintiff issuer claimed that two individuals (last names "Yu" and "Wise") were acting as a group for purposes of Section 13(d). The plaintiff pointed to "their longstanding business relationship—including their past joint business ventures, Yu's present employment at Wise's company (Forward China), and the fact that Wise proposed that Yu become a Forward director (and, failing that, invited her to attend Board meetings)." *Id.* at *3. These claims were dismissed with prejudice: as the Court succinctly concluded, "nothing about Wise and Yu's relationship supports the inference that they had any agreement or understanding regarding Forward stock." *Id.*

---

[22] Because many of the following cases were decided prior to the *Twombly* and *Iqbal* decisions, as well as enactment of the PSLRA, they underscore that such claims do not approach the satisfaction of modern pleading standards. *See Quigley Corp. v. Karkus*, No. 09-1725, 2009 WL 1383280, at *4 (E.D. Pa. May 15, 2009) (dismissing request for preliminary injunction where the "sum total of the evidence presented to the Court amounts to the largely undisputed propositions that [the alleged group] know each other through various business and social – or familial connections – some dating back a number of years . . ."); *Log On Am.*, 223 F. Supp. 2d 435 (granting motion to dismiss Section 13(d) claim where plaintiff alleged group was formed because alleged members "in the past, have jointly invested in companies . . . in each deal, upon information and belief, as well as in the instant transaction, used the same law firm to represent them"); *Torchmark v. Bixby*, 708 F. Supp. 1070, 1083 (W.D. Mo. 1988) ("The mere fact that defendants were related through blood, marriage, business or social relationships is insufficient to warrant the finding that a 'group' existed within the definition of § 13(d) of the Act."; denying requested injunction); *K-N Energy, Inc. v. Gulf Interstate Co.*, 607 F. Supp. 756, 765 (D. Colo. 1983) ("[A]s the plaintiff acknowledges, relationships alone are not enough to show an agreement to act in concert sufficient to indicate group membership . . . there must be evidence that indicates an intention to act in concert over and above the prior and continuing relationships between the various parties."); *Transcon Lines v. A.G. Becker Inc.*, 470 F. Supp. 356, 375 (S.D.N.Y. 1979) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create the group which is deemed to be a statutory person." (quotation marks and citation omitted)); *Univ. Container Corp. v. Horwitz*, No. 74 Civ. 3865, 1977 WL 1036, *16 (S.D.N.Y. Sept. 6, 1977) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group which is deemed to be a statutory person. There must be agreement to act in concert."); *Texasgulf, Inc. v. Canada Dev. Corp.*, 366 F. Supp. 374, 403 (S.D. Tex. 1973) ("It takes more than the arithmetic of adding up shares to determine that a statutory group exists and that a filing must be made. Two criteria must be met: (1) The members must agree to act together for the purpose of acquiring, holding, or disposing of securities; and (2) once the members agree to act, they must own beneficially or acquire beneficially in excess of 5% of a class of equity security. Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group which is deemed to be a statutory person. There must be agreement to act in concert."); Steven Levy, REGULATION OF SECURITIES: SEC ANSWER BOOK (5th ed. 2020) ("A mere relationship, among individuals or entities, whether family, personal, or business does not create a group 'person.'").

So too here. A business venture that Swann and Moore pursued more than 20 years ago does not suggest that they now have any agreement or understanding regarding Ashford's securities.

Consistent with these myriad holdings, courts finding that a group was formed where there was a pre-existing relationship among the alleged group members *have only done so* where there were additional, substantial allegations of group activity that demonstrated an agreement to act with regard to the pertinent company's securities.  Plaintiff's citation to the Court's *Hollywood Casino* decision is instructive in this regard.  2002 WL 1610598, at *2; *see* Dkt. 7 at 15-16.  There, on August 10, 2001, the plaintiff issuer (Hollywood) chose not to re-elect its CEO or general counsel, brothers who collectively owned roughly 35% of the company's common stock.  *Id.* at *1.  The former CEO was "a long-time friend" of Harold Simmons, who was "alleged to be a well-known corporate 'raider'" and thus had a history of corporate takeovers.  *Id.*

*But critically*, beyond this alleged friendship with a "corporate raider," the plaintiff *also* alleged: (i) that the former CEO had "shared confidential information about Hollywood with Simmons"; (ii) he had also "publicly represented to others that he had formed a group with the intention of taking control of Hollywood and reinstalling himself as chairman"; and (iii) Simmons' trading activity was coordinated with the August 10 firing of his CEO-friend:  "Simmons decided to take a significant stock position in Hollywood only *after* Jack, his old friend, was removed from his position as Chairman/CEO," which the Court deemed "highly suggestive" of group activity. *Id.*  These detailed, particularized allegations of group behavior, taken as a whole, understandably sufficed to withstand a motion to dismiss.  *Id.*[23]  But these particularized allegations stand in stark

---

[23] The *Hollywood Casino* decision references three cases where friendship was one among many allegations of group activity.  *See Hollywood*, 2002 WL 1610598, at *2 n.14.  These similarly reinforce that a pre-existing relationship alone does not suffice.  *Citing Savoy*, 587 F.2d 1149, 1164 (holding "Zimmerman" to be a member of a group for all the reasons discussed above, *supra* pp. 18-19, including his "control" of a group member; beyond noting he had known the target company's president for "a number of years", alleging he had been a stockholder in the company for a decade, and had asked others in the group to "purchase [company] shares for" him but "asked that the shares be put in street names"); *GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971) (noting "only a few of the nine overt acts GAF

contrast to what Ashford offers here: an allegation of a business that Swann and non-party Moore formed more than 20 years ago that had and has nothing to do with Ashford.

Ashford's related allegation that in September and October 2020 Swann sent Moore "some of Cygnus' public statements about Ashford" (as stated in Swann's declaration) also does not support Ashford's contention that a group was formed.  Am. Compl. ¶ 126.  Courts consistently hold that the fact of communications between two defendants are not sufficient to establish a Section 13(d) group.  *See Quigley Corp.*, 2009 WL 1383280, at *5 (finding one phone call and two emails exchanged between defendants "not enough" to support allegation of group formation; rejecting claims that "amount[ed] to the largely undisputed proposition that [defendants] know each other through various business and social – or familial connections"); *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*, 260 F. Supp. 2d 616, 632 (S.D.N.Y. 2003) (concluding "sporadic email communications" and one phone call did not reveal agreement by defendants to act together for purposes of acquiring or voting plaintiff entity's stock).  A holding otherwise would create the exception that swallows the rule and severely imperil practically all stockholder communication.

---

alleged" were "necessary" to examine to conclude a group existed; four immediate family members "sought senior management and board positions" for one of them; once rejected, "undertook a concerted effort to disparage [the company's] management and depress the price of [its] common and preferred stock in order to facilitate the acquisition of additional shares"; separately sued the company alleging "waste and spoliation of corporate assets" which was alleged to be an abuse of discovery devices to "gain valuable information for their takeover conspiracy" all while "in the meantime" two of the family members acquired additional common stock); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169, 175-76 (S.D.N.Y. 2000) (denying motion to dismiss Section 13(d) claim where defendant Gotham separately filed litigation to replace the target company's manager thus indicating a control interest; co-defendants "PMG and Interstate have been actively involved in previous investments by Gotham or its principals"; plaintiff alleged "that there has been extensive communication between Gotham, PMG, Interstate, Roth, and EFO concerning Gotham's plans with respect to Hallwood"; they "owned 40 percent of the units"; and Gotham's principal and Roth had a "long-standing" personal relationship).

### 2.      Ashford's Citations Evidence The Extraordinary Facts And Circumstances Necessary To Support A Group Claim

As discussed above, Ashford's supporting authorities in its Amended Complaint make clear that the above-received threadbare allegations fall well short of those in which a group was found (regardless of procedural stage).   The cases cited in Ashford's brief in support of its requested preliminary injunction drive the point home: the few and far between successful "group" cases came replete with remarkable facts.   Dkt. 7 at 14-17.   Ashford's citations include cases in which: (i) those contesting their group status *had previously stated they were in a group*[24]; (ii) the alleged group engaged in *identical* trading patterns[25]; (iii) one member of the group controlled another (*supra* pp. 18-19; discussing *Savoy*); or (iv) one member of the group purchasing stock with a multi-million dollar loan from another.[26]   These remarkable circumstances bear no resemblance to the present circumstances, and compel dismissal of Ashford's Amended Complaint (as well as rejection of its request for injunctive relief).

\*\*\*\*\*

---

[24] *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 120 (2d Cir. 2001) (reversing summary judgment and finding fact issues existed where stockholder had filed a Schedule 13D indicating he "was a member of a 'group' under Section 13(d)" and filed Forms 4 and 5 also indicating he was "a 'member of [a] 13(d) group"); *Hollywood*, 2002 WL 1610598, at \*2 (denying motion to dismiss where former CEO of plaintiff entity had "publicly represented to others that he formed a group with the intention of taking control of Hollywood and reinstalling himself as chairman").

[25] *Greenberg v. Hudson Bay Master Fund Ltd.*, No. 14CV5226 DLC, 2015 WL 2212215, at \*1, \*6 (S.D.N.Y. May 12, 2015) (finding complaint sufficiently alleged formation of shareholder group because of defendants' $4 million "simultaneous investment" in entity); *Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 619 (S.D.N.Y. 1989) (denying plaintiff's request for "extreme remedy" of preliminary injunction despite inference that defendants were "acting in concert . . . from the fact that large block purchases in identical quantities were made by [defendants]"); *Champion Parts Rebuilders, Inc. v. Cormier Corp.*, 661 F. Supp. 825, 830, 835 n.22, 850 (N.D. Ill. 1987) (granting preliminary injunction because, among other reasons, group's trading was coordinated through shared brokers and driven by "agreement to buy all available shares . . . 'side-by-side'" as evidenced in the opinion in part by a chart showing identical trades on nine different dates); *see also supra* at p. 13 (discussing *General Aircraft*).

[26] *Roth v. Jennings*, 489 F.3d 499, 511, 512-13 (2d Cir. 2007) (reversing district court's grant of motion to dismiss because complaint sufficiently alleged that one defendant's $10 million loan to another "was made for the purpose of allowing him to buy [entity's] shares in furtherance of [defendants'] agreement to work together to effect a change of control or similar transaction involving [entity]").

Ashford does not allege any facts (let alone particularized facts), permitting one to conclude, even with the benefit of all inferences, that ThornTree participated in any agreement regarding Ashford's securities.  Instead, it offers (i) the incorrect suggestion that ThornTree and the Cygnus Defendants traded "at or about the same time," Am. Compl. ¶ 42, dispensed with above; (ii) a three-sentence paragraph alleging that more than 20 years ago, Moore and Swann had a business relationship that had nothing to do with Ashford, *id.* ¶ 53; and (iii) the allegation that Swann sent Moore public statements about Ashford in fall 2020.  Ashford's counterintuitive, threadbare, and conclusory allegations do not state a Section 13(d) claim and Count I should consequently be dismissed.

### B.     The Failure Of Ashford's Section 13(d) Group Theory Dooms The Remainder Of Its Claims Against ThornTree.

All of Ashford's claims against ThornTree are derivative of the above:  without a Section 13(d) group, these claims all fail.  Counts II and III allege that the Cygnus Defendants' January 5, 2021 press release and Schedule 13D/A "fail[ed] to disclose that the Cygnus Defendants, ThornTree Defendants, and Harvey are acting as a group within the meaning of Rule 13d-5 to wage a proxy campaign" and therefore those filings violated Sections 14(a) and 13(d) of the Exchange Act, respectively.  *See* Am. Compl. ¶¶ 142-156.  Count IV alleges that, "in light of Defendants' violations of the federal securities laws, including Sections 13(d) and 14(a) of the Exchange Act," ThornTree violated Ashford's bylaws for failing to provide information required in connection with the Cygnus Defendants' director nominations.  *Id.* ¶¶ 157-168.  Counts V and VI are not directed against ThornTree at all; to the extent Ashford suggests otherwise, those counts target the Cygnus Defendants' director nominations, and thus implicate ThornTree only if the Court concludes that ThornTree was part of the nominating "group."  *Id.* ¶¶ 169-187.  Counts VII and VIII also allege that because ThornTree allegedly "formed a 13(d) group," it and the other

Defendants "failed to comply with" the 9.8% ownership threshold in Ashford's charter. *Id.* ¶¶ 188-208.  For all the same reasons as outlined above, these claims fail.

Further, Ashford's claims also fail against ThornTree because they are moot.  ThornTree does not own any Ashford securities, rendering the relief Ashford seeks an impossibility.

Finally, contrary to Ashford's suggestion that its state law claims are "routinely upheld," those claims are novel, and thus should be treated with great caution (particularly with regard to Ashford's pending, parallel request for injunctive relief).[27]

## CONCLUSION

For all of the foregoing reasons, ThornTree respectfully requests that the Court dismiss Ashford's claims against it, with prejudice.

Dated:  February 22, 2021.

<div style="margin-left: 40%;">

Respectfully submitted,

By: */s/  Yolanda C. Garcia*
Yolanda C. Garcia
Texas Bar No. 24012457
ygarcia@sidley.com
David Sillers
Texas Bar No. 24072341
dsillers@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981-3300 (Telephone)
(214) 981-3400 (Facsimile)

</div>

---

[27] Ashford's Maryland state law claims focus on alleged breaches of its charter and bylaws: specifically, a provision providing that share accumulations over 9.8% trigger a series of rights for Ashford vis-à-vis those securities.  *See, e.g.*, Am. Compl. ¶¶ 188-199 (alleging irreparable harm tied to breach of the "9.8% Ownership Limit" which Ashford alleges rendered at-issue shares "the rightful property of the Charitable Trust").  Although Ashford claims that such provisions are "routinely upheld," Am. Compl. ¶ 8, current research has not uncovered any case in which any court, let alone a Maryland court, enforced any such REIT charter provision.  Rather, Ashford appears to have cited the one case in which a court considered if a REIT's board of directors had properly exercised its business judgment in refusing to grant a stockholder permission to exceed such a threshold—a rather different circumstance than either holding such a breach occurred or enforcing remedies predicated on that breach.  *Id.*  It thus bears noting that although Ashford suggests otherwise, the relief it seeks here is novel: this Court would be the first to ever enforce such a provision, which appears to otherwise be an open and unanswered question under Maryland law.

and

Alex J. Kaplan (*pro hac vice*)
ajkaplan@sidley.com
Charlotte K. Newell (*pro hac vice*)
cnewell@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300 (Telephone)
(212) 839-5599 (Facsimile)

*Attorneys for Defendants ThornTree Capital
Partners LP, ThornTree Capital Master
Fund LP, and ThornTree Capital GP LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, February 22, 2021, I caused the foregoing Motion to Dismiss the Amended Complaint, to be electronically served via the Court's CM/ECF system to all parties of record.

 /s/  David Sillers
David Sillers

# EXHIBIT A

## Complete List of Transactions in the Cygnus Defendants' Schedule 13D, As Amended

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 7/17/2020 | Sale of Common Stock | (5,000) | 7.3072 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 7/28/2020 | Purchase of Common Stock | 1,300 | 4.3783 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/3/2020 | Purchase of Common Stock | 3,500 | 3.73 | Christopher Swann | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 12,000 | 3.6448 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 2,500 | 4.1775 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 200 | 4.08 | Christopher Swann | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 1,900 | 4.08 | Christopher Swann | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 2,400 | 4.1 | Christopher Swann | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 80 | 4.09 | Christopher Swann | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 500 | 4.09 | Christopher Swann | 9/18/2020 |
| 8/4/2020 | Purchase of Common Stock | 4,420 | 4.08 | Christopher Swann | 9/18/2020 |
| 8/5/2020 | Purchase of Common Stock | 3,200 | 4.0922 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/5/2020 | Purchase of Common Stock | 100 | 4.12 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/5/2020 | Purchase of Common Stock | 11,700 | 4.1463 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/5/2020 | Purchase of Common Stock | 15,000 | 4.1191 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/6/2020 | Purchase of Common Stock | 2,900 | 4.0512 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/10/2020 | Purchase of Common Stock | 600 | 3.9817 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/10/2020 | Purchase of Common Stock | 14,400 | 3.99 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/10/2020 | Purchase of Common Stock | 1,000 | 4.01 | Christopher Swann | 9/18/2020 |
| 8/10/2020 | Purchase of Common Stock | 1,000 | 4.01 | Christopher Swann | 9/18/2020 |
| 8/11/2020 | Purchase of Common Stock | 25,000 | 4.0716 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/11/2020 | Purchase of Common Stock | 6,300 | 4.04 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/11/2020 | Purchase of Common Stock | 180 | 4.01 | Christopher Swann | 9/18/2020 |
| 8/11/2020 | Purchase of Common Stock | 200 | 4 | Christopher Swann | 9/18/2020 |
| 8/11/2020 | Purchase of Common Stock | 4,120 | 4 | Christopher Swann | 9/18/2020 |
| 8/13/2020 | Purchase of Common Stock | 10,000 | 3.7113 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/14/2020 | Purchase of Common Stock | 5,000 | 3.6418 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 50,000 | 3.5113 | Cygnus Opportunity Fund, LLC | 9/18/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 8/17/2020 | Purchase of Common Stock | 10,000 | 3.5292 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 10,000 | 3.5194 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 5,222 | 3.5229 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 701 | 3.5414 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 1,800 | 3.5094 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 11,244 | 3.523 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 6,033 | 3.5273 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 2,800 | 3.5 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 7,200 | 3.5156 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 104 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 4,400 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 25 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 600 | 3.52 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 3,539 | 3.52 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 1,332 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 5,000 | 3.63 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 1,800 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 1,000 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 200 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 200 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 500 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 100 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 3,200 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 3,900 | 3.52 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 1,100 | 3.52 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 500 | 3.52 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 9,500 | 3.52 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 4,000 | 3.5 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 100 | 3.5 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 5,102 | 3.5 | Christopher Swann | 9/18/2020 |
| 8/17/2020 | Purchase of Common Stock | 798 | 3.51 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 15,000 | 3.5287 | Cygnus Opportunity Fund, LLC | 9/18/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 8/18/2020 | Purchase of Common Stock | 10,000 | 3.47 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 600 | 3.46 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 100 | 3.47 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 5,000 | 3.4 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 1,000 | 3.3889 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 2,500 | 3.41 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 5,000 | 3.425 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 300 | 3.45 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 100 | 3.44 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 5,222 | 3.44 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 4,378 | 3.45 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 5,000 | 3.41 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 3,000 | 3.45 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 275 | 3.42 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 1,800 | 3.44 | Christopher Swann | 9/18/2020 |
| 8/18/2020 | Purchase of Common Stock | 700 | 3.44 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 100,000 | 3.348 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 514 | 3.24 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 400 | 3.26 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 845 | 3.25 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 6,930 | 3.28 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 1,185 | 3.27 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 126 | 3.28 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 9,800 | 3.25 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 100 | 3.25 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 100 | 3.25 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 1,200 | 3.28 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 600 | 3.28 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 1,400 | 3.28 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 100 | 3.3 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 400 | 3.29 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 1,000 | 3.3 | Christopher Swann | 9/18/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 8/19/2020 | Purchase of Common Stock | 900 | 3.31 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 200 | 3.32 | Christopher Swann | 9/18/2020 |
| 8/19/2020 | Purchase of Common Stock | 6,700 | 3.32 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 100,000 | 3.4242 | Cygnus Property Fund V, LLC | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 19,000 | 3.4221 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 5,000 | 3.37 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 400 | 3.45 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 700 | 3.45 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 400 | 3.46 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 9,300 | 3.37 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 100 | 3.36 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 600 | 3.37 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 10 | 3.45 | Christopher Swann | 9/18/2020 |
| 8/20/2020 | Purchase of Common Stock | 4,990 | 3.45 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 1,500 | 3.1837 | Cygnus Property Fund V, LLC | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 18,500 | 3.1554 | Cygnus Property Fund V, LLC | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 10,000 | 3.1591 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 1,600 | 3.12 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 162 | 3.12 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 3,438 | 3.12 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 4,800 | 3.13 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 2,500 | 3.18 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 200 | 3.15 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 601 | 3.15 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 199 | 3.15 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 1,000 | 3.14 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 1,000 | 3.11 | Christopher Swann | 9/18/2020 |
| 8/21/2020 | Purchase of Common Stock | 2,500 | 3.18 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 5,000 | 3.1705 | Cygnus Property Fund V, LLC | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 2,400 | 3.0479 | Cygnus Property Fund IV, LLC | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 2,600 | 3.0893 | Cygnus Property Fund IV, LLC | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 8,232 | 3.1199 | Cygnus Opportunity Fund, LLC | 9/18/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 8/24/2020 | Purchase of Common Stock | 699 | 3.1914 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 50,000 | 3.0843 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 800 | 3.07 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 700 | 3.06 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 1,800 | 3.05 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 1,900 | 3.04 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 1,300 | 3.05 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 795 | 3.13 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 1,005 | 3.13 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 800 | 3.13 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 2,400 | 3.14 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 3,900 | 3.16 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 535 | 3.15 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 565 | 3.16 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 4,905 | 3.18 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 95 | 3.18 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 2,200 | 3.07 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 600 | 3.07 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 2,200 | 3.07 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 300 | 3.05 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 100 | 3.05 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 50 | 3.05 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 400 | 3.06 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 5,000 | 3.11 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 5,000 | 3.05 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 95 | 3.03 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 200 | 3.04 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 3,920 | 3.04 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 1,200 | 3.07 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 4,585 | 3.08 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 700 | 3.05 | Christopher Swann | 9/18/2020 |
| 8/24/2020 | Purchase of Common Stock | 4,300 | 3.05 | Christopher Swann | 9/18/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 8/24/2020 | Purchase of Common Stock | 7,500 | 3.22 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 8,600 | 3.0091 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 16,400 | 2.9179 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 100 | 3.08 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 700 | 3.09 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 200 | 3.1 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 1,300 | 3.12 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 950 | 3.11 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 2,500 | 2.97 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 400 | 2.97 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 200 | 2.98 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 3,801 | 2.99 | Christopher Swann | 9/18/2020 |
| 8/25/2020 | Purchase of Common Stock | 3,099 | 3 | Christopher Swann | 9/18/2020 |
| 8/26/2020 | Purchase of Common Stock | 3,175 | 2.8309 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/26/2020 | Purchase of Common Stock | 1,500 | 2.89 | Christopher Swann | 9/18/2020 |
| 8/26/2020 | Purchase of Common Stock | 300 | 2.67 | Christopher Swann | 9/18/2020 |
| 8/26/2020 | Purchase of Common Stock | 100 | 2.67 | Christopher Swann | 9/18/2020 |
| 8/26/2020 | Purchase of Common Stock | 600 | 2.67 | Christopher Swann | 9/18/2020 |
| 8/26/2020 | Purchase of Common Stock | 1,000 | 2.67 | Christopher Swann | 9/18/2020 |
| 8/27/2020 | Purchase of Common Stock | 5,000 | 2.8259 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/27/2020 | Purchase of Common Stock | 500 | 2.88 | Christopher Swann | 9/18/2020 |
| 8/27/2020 | Purchase of Common Stock | 4,000 | 2.85 | Christopher Swann | 9/18/2020 |
| 8/28/2020 | Purchase of Common Stock | 227 | 2.7824 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/28/2020 | Purchase of Common Stock | 9,773 | 3.0822 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 8/28/2020 | Purchase of Common Stock | 3,000 | 3.12 | Christopher Swann | 9/18/2020 |
| 8/31/2020 | Purchase of Common Stock | 1,500 | 3.04 | Christopher Swann | 9/18/2020 |
| 8/31/2020 | Purchase of Common Stock | 2,300 | 3.15 | Christopher Swann | 9/18/2020 |
| 8/31/2020 | Purchase of Common Stock | 700 | 3.13 | Christopher Swann | 9/18/2020 |
| 9/1/2020 | Purchase of Common Stock | 100 | 3.1 | Christopher Swann | 9/18/2020 |
| 9/1/2020 | Purchase of Common Stock | 4,900 | 3.1 | Christopher Swann | 9/18/2020 |
| 9/1/2020 | Purchase of Common Stock | 1,000 | 3.04 | Christopher Swann | 9/18/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 9/4/2020 | Purchase of December 18, 2020 Call Option ($5 Strike Price) | 15 | 0.56 | Christopher Swann | 9/18/2020 |
| 9/4/2020 | Purchase of December 18, 2020 Call Option ($5 Strike Price) | 23 | 0.56 | Christopher Swann | 9/18/2020 |
| 9/4/2020 | Purchase of December 18, 2020 Call Option ($5 Strike Price) | 162 | 0.56 | Christopher Swann | 9/18/2020 |
| 9/4/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 12 | 0.86 | Christopher Swann | 9/18/2020 |
| 9/4/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 188 | 0.86 | Christopher Swann | 9/18/2020 |
| 9/9/2020 | Purchase of Common Stock | 9,121 | 2.4762 | Cygnus Property Fund V, LLC | 9/18/2020 |
| 9/9/2020 | Purchase of Common Stock | 405 | 2.4762 | Cygnus Property Fund IV, LLC | 9/18/2020 |
| 9/9/2020 | Purchase of Common Stock | 474 | 2.4762 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 9/9/2020 | Purchase of Common Stock | 4,250 | 2.5 | Christopher Swann | 9/18/2020 |
| 9/9/2020 | Purchase of December 18, 2020 Call Option ($5 Strike Price) | 20 | 0.47 | Christopher Swann | 9/18/2020 |
| 9/9/2020 | Purchase of December 18, 2020 Call Option ($5 Strike Price) | 20 | 0.48 | Christopher Swann | 9/18/2020 |
| 9/9/2020 | Purchase of December 18, 2020 Call Option ($5 Strike Price) | 60 | 0.51 | Christopher Swann | 9/18/2020 |
| 9/9/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 10 | 0.81 | Christopher Swann | 9/18/2020 |
| 9/9/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 1 | 0.81 | Christopher Swann | 9/18/2020 |
| 9/9/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 89 | 0.81 | Christopher Swann | 9/18/2020 |
| 9/10/2020 | Purchase of Common Stock | 5,000 | 2.28 | Christopher Swann | 9/18/2020 |
| 9/10/2020 | Purchase of Common Stock | 4,710 | 2.28 | Christopher Swann | 9/18/2020 |
| 9/10/2020 | Purchase of Common Stock | 290 | 2.29 | Christopher Swann | 9/18/2020 |
| 9/10/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 4 | 0.71 | Christopher Swann | 9/18/2020 |
| 9/10/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 95 | 0.71 | Christopher Swann | 9/18/2020 |
| 9/10/2020 | Purchase of March 19, 2021 Call Option ($5 Strike Price) | 1 | 0.91 | Christopher Swann | 9/18/2020 |
| 9/11/2020 | Purchase of Common Stock | 8,400 | 2.02 | Christopher Swann | 9/18/2020 |
| 9/11/2020 | Purchase of Common Stock | 1,600 | 2.01 | Christopher Swann | 9/18/2020 |
| 9/11/2020 | Purchase of Common Stock | 10,000 | 2.02 | Christopher Swann | 9/18/2020 |
| 9/11/2020 | Purchase of Common Stock | 300 | 2.02 | Christopher Swann | 9/18/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 9/11/2020 | Purchase of Common Stock | 100 | 2.02 | Christopher Swann | 9/18/2020 |
| 9/11/2020 | Purchase of Common Stock | 4,600 | 2.02 | Christopher Swann | 9/18/2020 |
| 9/11/2020 | Purchase of Common Stock | 10,000 | 1.99 | Christopher Swann | 9/18/2020 |
| 9/14/2020 | Purchase of Common Stock | 2,000 | 1.9 | Christopher Swann | 9/18/2020 |
| 9/15/2020 | Purchase of Common Stock | 300 | 1.94 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 9/16/2020 | Purchase of Common Stock | 3,000 | 2.07 | Cygnus Opportunity Fund, LLC | 9/18/2020 |
| 9/28/2020 | Purchase of Common Stock | 3,790 | 1.75 | Cygnus Property Fund V, LLC | 9/30/2020 |
| 9/28/2020 | Purchase of Common Stock | 1,210 | 1.76 | Cygnus Property Fund V, LLC | 9/30/2020 |
| 9/28/2020 | Purchase of Common Stock | 5,000 | 1.9854 | Cygnus Property Fund V, LLC | 9/30/2020 |
| 9/28/2020 | Purchase of Common Stock | 8,000 | 1.75 | Christopher Swann | 9/30/2020 |
| 9/28/2020 | Purchase of Common Stock | 5,000 | 1.75 | Christopher Swann | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 5,879 | 1.6986 | Cygnus Property Fund V, LLC | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 9,405 | 1.6763 | Cygnus Property Fund V, LLC | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 5,000 | 1.6786 | Cygnus Property Fund V, LLC | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 4,595 | 1.6999 | Cygnus Property Fund IV, LLC | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 595 | 1.6763 | Cygnus Property Fund IV, LLC | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 100 | 1.94 | Cygnus Opportunity Fund, LLC | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 10,000 | 1.7 | Christopher Swann | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 7,500 | 1.72 | Christopher Swann | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 6,000 | 1.72 | Christopher Swann | 9/30/2020 |
| 9/29/2020 | Purchase of Common Stock | 4,000 | 1.72 | Christopher Swann | 9/30/2020 |
| 9/30/2020 | Purchase of Common Stock | 5,000 | 1.6669 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 9/30/2020 | Purchase of Common Stock | 1,000 | 1.64 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/1/2020 | Purchase of Common Stock | 9,299 | 1.699 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/1/2020 | Purchase of Common Stock | 701 | 1.71 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/1/2020 | Purchase of Common Stock | 20,000 | 1.661 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/2/2020 | Purchase of Common Stock | 9,405 | 1.709 | Cygnus Property Fund IV, LLC | 10/20/2020 |
| 10/2/2020 | Purchase of Common Stock | 2,100 | 1.71 | Cygnus Opportunity Fund, LLC | 10/20/2020 |
| 10/2/2020 | Purchase of Common Stock | 3,720 | 1.71 | Cygnus Opportunity Fund, LLC | 10/20/2020 |
| 10/2/2020 | Purchase of Common Stock | 4,000 | 1.65 | Christopher Swann | 10/20/2020 |
| 10/2/2020 | Purchase of Series H Preferred Stock | 500 | 3.992 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/2/2020 | Purchase of Series H Preferred Stock | 1,200 | 4.5 | Cygnus Property Fund V, LLC | 12/1/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 10/2/2020 | Purchase of Series F Preferred Stock | 1,500 | 4.2783 | Christopher Swann | 12/1/2020 |
| 10/2/2020 | Purchase of Series H Preferred Stock | 700 | 4.105 | Christopher Swann | 12/1/2020 |
| 10/2/2020 | Purchase of Series H Preferred Stock | 2,300 | 4.085 | Christopher Swann | 12/1/2020 |
| 10/5/2020 | Purchase of Common Stock | 2,000 | 1.77 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/5/2020 | Purchase of Series H Preferred Stock | 1,100 | 4.8842 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/5/2020 | Purchase of Series F Preferred Stock | 1,100 | 4.64 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/6/2020 | Purchase of Common Stock | 100 | 1.65 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/6/2020 | Purchase of Common Stock | 400 | 1.645 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/6/2020 | Purchase of Common Stock | 1,000 | 1.6542 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/6/2020 | Purchase of Common Stock | 5,000 | 1.6242 | Cygnus Opportunity Fund, LLC | 10/20/2020 |
| 10/6/2020 | Purchase of Series F Preferred Stock | 1,000 | 4.625 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/6/2020 | Purchase of Series H Preferred Stock | 1,870 | 4.4845 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/6/2020 | Purchase of Series H Preferred Stock | 30 | 4.55 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/7/2020 | Purchase of Common Stock | 5,000 | 1.4583 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/7/2020 | Purchase of Common Stock | 3,100 | 1.4666 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/7/2020 | Purchase of Common Stock | 500 | 1.532 | Cygnus Property Fund V, LLC | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 1,264 | 1.54 | Christopher Swann | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 236 | 1.54 | Christopher Swann | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 7,500 | 1.53 | Christopher Swann | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 5,000 | 1.53 | Christopher Swann | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 2,200 | 1.56 | Christopher Swann | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 1,700 | 1.57 | Christopher Swann | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 100 | 1.57 | Christopher Swann | 10/20/2020 |
| 10/9/2020 | Purchase of Common Stock | 6,000 | 1.57 | Christopher Swann | 10/20/2020 |
| 10/12/2020 | Purchase of Series H Preferred Stock | 1,000 | 5.6349 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/14/2020 | Purchase of Common Stock | 10,000 | 1.4385 | Cygnus Opportunity Fund, LLC | 10/20/2020 |
| 10/14/2020 | Purchase of Series F Preferred Stock | 1,900 | 5.3588 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/15/2020 | Purchase of Common Stock | 10,000 | 1.3867 | Cygnus Opportunity Fund, LLC | 10/20/2020 |
| 10/15/2020 | Purchase of Series H Preferred Stock | 2,100 | 5.2676 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/16/2020 | Purchase of Common Stock | 10,000 | 1.375 | Cygnus Opportunity Fund, LLC | 10/20/2020 |
| 10/20/2020 | Purchase of Common Stock | 5,000 | 1.45 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/20/2020 | Purchase of Series H Preferred Stock | 1,900 | 5.3158 | Cygnus Property Fund V, LLC | 12/1/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 10/23/2020 | Purchase of Series F Preferred Stock | 600 | 5.3955 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/26/2020 | Purchase of Common Stock | 10,000 | 1.5814 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/27/2020 | Purchase of Common Stock | 100 | 1.64 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/27/2020 | Purchase of Common Stock | 10,000 | 1.4682 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 100 | 1.49 | Cygnus Property Fund V, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 100 | 1.49 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 300 | 1.41 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 15,000 | 1.4177 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 100 | 1.4573 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 600 | 1.44 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 5,000 | 1.44 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 5,000 | 1.45 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 5,000 | 1.486 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 500 | 1.4873 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 100 | 1.44 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 100 | 1.45 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/28/2020 | Purchase of Common Stock | 4,100 | 1.45 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 5,000 | 1.28 | Cygnus Property Fund IV, LLC | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 10,000 | 1.31 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 5,000 | 1.3248 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 1,776 | 1.28 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 8,224 | 1.29 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 5,000 | 1.275 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 5,000 | 1.28 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 1,600 | 1.2898 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 500 | 1.285 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 12,900 | 1.29 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 200 | 1.285 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 4,900 | 1.29 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 9,900 | 1.3 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 15,000 | 1.29 | Christopher Swann | 11/12/2020 |
| 10/30/2020 | Purchase of Common Stock | 20,000 | 1.275 | Christopher Swann | 11/12/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 10/30/2020 | Purchase of Series F Preferred Stock | 1,000 | 5.6335 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 10/30/2020 | Purchase of Series F Preferred Stock | 5,000 | 5.471 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/2/2020 | Purchase of Common Stock | 5,000 | 1.41 | Cygnus Property Fund IV, LLC | 11/12/2020 |
| 11/2/2020 | Purchase of Common Stock | 100 | 1.34 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/2/2020 | Purchase of Common Stock | 700 | 1.355 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/2/2020 | Purchase of Common Stock | 10,000 | 1.35 | Christopher Swann | 11/12/2020 |
| 11/2/2020 | Purchase of Series H Preferred Stock | 300 | 5.8467 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/3/2020 | Purchase of Common Stock | 100 | 1.515 | Cygnus Property Fund V, LLC | 11/12/2020 |
| 11/3/2020 | Purchase of Common Stock | 100 | 1.43 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/3/2020 | Purchase of Common Stock | 100 | 1.45 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/3/2020 | Purchase of Common Stock | 100 | 1.42 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/3/2020 | Purchase of Common Stock | 1,000 | 1.42 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/3/2020 | Purchase of Common Stock | 500 | 1.51 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/3/2020 | Purchase of Common Stock | 750 | 1.5736 | Christopher Swann | 11/12/2020 |
| 11/3/2020 | Purchase of Series H Preferred Stock | 1,200 | 5.7942 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/4/2020 | Purchase of Common Stock | 10,000 | 1.4828 | Cygnus Property Fund V, LLC | 11/12/2020 |
| 11/6/2020 | Purchase of Series F Preferred Stock | 3,262 | 5.929 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/6/2020 | Purchase of Series F Preferred Stock | 1,738 | 5.9753 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/6/2020 | Purchase of Series G Preferred Stock | 1,906 | 5.8979 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/6/2020 | Purchase of Series G Preferred Stock | 4,094 | 5.9569 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/6/2020 | Purchase of Series G Preferred Stock | 3,163 | 5.91 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/9/2020 | Purchase of Common Stock | 1,207 | 1.7098 | Cygnus Property Fund V, LLC | 11/12/2020 |
| 11/9/2020 | Purchase of Common Stock | 20,000 | 1.7851 | Cygnus Property Fund V, LLC | 11/12/2020 |
| 11/9/2020 | Purchase of Common Stock | 1,811 | 1.5323 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/9/2020 | Purchase of Common Stock | 10,000 | 1.57 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/9/2020 | Purchase of Common Stock | 50,000 | 1.9497 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/9/2020 | Purchase of Common Stock | 25,000 | 2.0362 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/9/2020 | Purchase of Common Stock | 25,000 | 2.0929 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/9/2020 | Purchase of Common Stock | 10,000 | 2.0595 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/9/2020 | Sale of December 18, 2020 Call Option ($5.00 Strike Price) 2 | (5,000) | 1.4 | Christopher Swann | 11/12/2020 |
| 11/9/2020 | Purchase of Series F Preferred Stock | 5,000 | 7.4 | Cygnus Property Fund V, LLC | 12/1/2020 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 11/9/2020 | Purchase of Series H Preferred Stock | 2,501 | 6.68 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/9/2020 | Purchase of Series G Preferred Stock | 1,500 | 7.0833 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/9/2020 | Purchase of Series G Preferred Stock | 400 | 7.14 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/9/2020 | Purchase of Series G Preferred Stock | 2,006 | 7.8391 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/9/2020 | Purchase of Series G Preferred Stock | 2,650 | 7.996 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/9/2020 | Purchase of Series I Preferred Stock | 4,430 | 6.8 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/9/2020 | Purchase of Series I Preferred Stock | 5,289 | 8.1379 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/10/2020 | Purchase of Series H Preferred Stock | 3,654 | 7.5 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/10/2020 | Purchase of Series H Preferred Stock | 1,346 | 8.05 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/11/2020 | Sale of Common Stock | (11,700) | 3.135 | Cygnus Opportunity Fund, LLC | 11/12/2020 |
| 11/16/2020 | Purchase of Series G Preferred Stock | 35,000 | 7.9 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/16/2020 | Purchase of Series G Preferred Stock | 25,000 | 7.8965 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/16/2020 | Purchase of Series G Preferred Stock | 10,000 | 7.8987 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/16/2020 | Purchase of Series G Preferred Stock | 9,000 | 7.8986 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/16/2020 | Purchase of Series G Preferred Stock | 797 | 7.75 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/16/2020 | Purchase of Series G Preferred Stock | 8,203 | 7.75 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 11/16/2020 | Purchase of Series G Preferred Stock | 6,000 | 7.7504 | Cygnus Opportunity Fund, LLC | 1/5/2021 |
| 11/17/2020 | Purchase of Series G Preferred Stock | 2,000 | 8.24 | Christopher Swann | 1/5/2021 |
| 11/18/2020 | Purchase of Series F Preferred Stock | 3,700 | 8.7451 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/18/2020 | Purchase of Series H Preferred Stock | 2,644 | 8.8155 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/18/2020 | Purchase of Series F Preferred Stock | 10,000 | 8.78 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 11/23/2020 | Purchase of Series G Preferred Stock | 5,000 | 9.78 | Cygnus Opportunity Fund, LLC | 1/5/2021 |
| 11/30/2020 | Purchase of Series H Preferred Stock | 1,000 | 9.75 | Cygnus Property Fund V, LLC | 12/1/2020 |
| 12/3/2020 | Purchase of Series F Preferred Stock | 2,200 | 9.8314 | Cygnus Property Fund V, LLC | 12/10/2020 |
| 12/4/2020 | Purchase of Series F Preferred Stock | 2,100 | 10.6233 | Cygnus Property Fund V, LLC | 12/10/2020 |
| 12/7/2020 | Purchase of Series H Preferred Stock | 1,100 | 10.4709 | Cygnus Property Fund V, LLC | 12/10/2020 |
| 12/8/2020 | Purchase of Series F Preferred Stock | 2,000 | 12.5965 | Cygnus Property Fund V, LLC | 12/10/2020 |
| 12/8/2020 | Purchase of Series I Preferred Stock | 1,000 | 12.254 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/11/2020 | Purchase of Series G Preferred Stock | 1,000 | 15.3589 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/14/2020 | Purchase of Series G Preferred Stock | 300 | 15.2967 | Cygnus Opportunity Fund, LLC | 1/5/2021 |
| 12/14/2020 | Purchase of Series I Preferred Stock | 400 | 15.3325 | Cygnus Opportunity Fund, LLC | 1/5/2021 |
| 12/15/2020 | Purchase of Series G Preferred Stock | 500 | 14.466 | Cygnus Property Fund V, LLC | 1/5/2021 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 12/15/2020 | Purchase of Series G Preferred Stock | 792 | 15.2294 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/15/2020 | Purchase of Series I Preferred Stock | 2,100 | 14.9985 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/15/2020 | Purchase of Series I Preferred Stock | 500 | 14.77 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/15/2020 | Purchase of Series G Preferred Stock | 11 | 15.52 | Christopher Swann | 1/5/2021 |
| 12/15/2020 | Purchase of Series G Preferred Stock | 300 | 15.51 | Christopher Swann | 1/5/2021 |
| 12/15/2020 | Purchase of Series G Preferred Stock | 1,400 | 15.49 | Christopher Swann | 1/5/2021 |
| 12/15/2020 | Purchase of Series G Preferred Stock | 189 | 15.54 | Christopher Swann | 1/5/2021 |
| 12/15/2020 | Purchase of Series G Preferred Stock | 600 | 15.46 | Christopher Swann | 1/5/2021 |
| 12/16/2020 | Purchase of Series G Preferred Stock | 200 | 14.71 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/16/2020 | Purchase of Series G Preferred Stock | 2,100 | 14.9477 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/16/2020 | Purchase of Series I Preferred Stock | 1,000 | 14.672 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/16/2020 | Purchase of Series I Preferred Stock | 3,000 | 14.84 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/18/2020 | Purchase of Series G Preferred Stock | 40 | 15.77 | Christopher Swann | 1/5/2021 |
| 12/18/2020 | Purchase of Series G Preferred Stock | 100 | 15.55 | Christopher Swann | 1/5/2021 |
| 12/18/2020 | Purchase of Series G Preferred Stock | 200 | 15.72 | Christopher Swann | 1/5/2021 |
| 12/18/2020 | Purchase of Series G Preferred Stock | 660 | 15.57 | Christopher Swann | 1/5/2021 |
| 12/18/2020 | Purchase of Series G Preferred Stock | 1,500 | 15.7 | Christopher Swann | 1/5/2021 |
| 12/21/2020 | Purchase of Series G Preferred Stock | 700 | 15.0629 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/21/2020 | Purchase of Series G Preferred Stock | 1,200 | 15.0742 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/21/2020 | Purchase of Series I Preferred Stock | 300 | 14.9367 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/22/2020 | Purchase of Series F Preferred Stock | 2,100 | 12.9767 | Cygnus Property Fund V, LLC | 12/29/2020 |
| 12/22/2020 | Purchase of Series F Preferred Stock | 2,100 | 12.61 | Cygnus Property Fund V, LLC | 12/29/2020 |
| 12/22/2020 | Purchase of Series G Preferred Stock | 2,100 | 13.0944 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/22/2020 | Purchase of Series I Preferred Stock | 2,100 | 13.0459 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/22/2020 | Purchase of Series I Preferred Stock | 2,100 | 13.1357 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/22/2020 | Purchase of Series I Preferred Stock | 200 | 13.53 | Christopher Swann | 1/5/2021 |
| 12/22/2020 | Purchase of Series I Preferred Stock | 300 | 13.54 | Christopher Swann | 1/5/2021 |
| 12/22/2020 | Purchase of Series I Preferred Stock | 2,000 | 13.5 | Christopher Swann | 1/5/2021 |
| 12/22/2020 | Purchase of Series G Preferred Stock | 1,000 | 13.53 | Christopher Swann | 1/5/2021 |
| 12/23/2020 | Purchase of Series G Preferred Stock | 4,000 | 13.048 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/23/2020 | Purchase of Series I Preferred Stock | 4,000 | 12.534 | Cygnus Property Fund V, LLC | 1/5/2021 |
| 12/23/2020 | Purchase of Series I Preferred Stock | 1,500 | 11.4772 | Cygnus Property Fund V, LLC | 1/5/2021 |

| Date of Transaction | Nature of Transaction | Amount of Securities Purchased/ (Sold) | Price per Share ($) | Reporting Person | Filing Date |
|---|---|---|---|---|---|
| 12/23/2020 | Purchase of Series G Preferred Stock | 100 | 13.21 | Christopher Swann | 1/5/2021 |
| 12/23/2020 | Purchase of Series G Preferred Stock | 1,631 | 13.27 | Christopher Swann | 1/5/2021 |
| 12/23/2020 | Purchase of Series G Preferred Stock | 769 | 13.21 | Christopher Swann | 1/5/2021 |